JUSTICE GABRIEL delivered the Opinion of the Court.* ¶1 In this case, petitioner Bernardino Fuentes-Espinoza challenges his convictions under Colorado’s human smuggling statute, section 18-13-128, C.R.S. (2017), on the ground that that statute is preempted by the federal Immigration and Nationality Act, 8 U.S.C. §§ 1101-1537 (2017) (“INA”).[1] The court of appeals division below did not consider Fuentes-Espinoza’s preemption argument because it was unpreserved. People v. Fuentes-Espinoza, 2013 COA 1, ¶ 16, — P.3d-. We, however, choose to exercise our discretion to review that argument and conclude that the INA preempts section 18-13-128 under the doctrines of both field and conflict preemption. ¶2 In reaching this conclusion, we agree with a number of federal circuit courts that have reviewed the same INA provisions at issue here and have determined that those provisions create a comprehensive framework to penalize the transportation, coneealment, and inducement of unlawfully present aliens and thus evince a congressional intent to occupy the field criminalizing such conduct. In addition, applying the analyses set forth in those federal decisions, we conclude that section 18-13-128, like the state human smuggling statutes at issue in the federal cases, stands as an obstacle to the accomplishment and execution of Congress’s purposes and objectives in enacting its comprehensive framework. ¶3 Accordingly, we reverse the division’s judgment and remand this case for further proceedings consistent with this opinion. 1. Facts and Procedural History ¶4 In 2007, Fuentes-Espinoza was walking along the Las Vegas Strip when an individual approached him and offered him $500 to drive several family members from Phoenix to Kansas. Fuentes-Espinoza accepted the offer, and he and a friend rode to Phoenix with the man who had made the offer. When the group arrived in Phoenix, Fuentes-Espinoza and his friend were dropped off at an apartment, where they waited for the man to return. ¶5 That evening, the man returned with a van full of people. The man gave Fuentes-Espinoza $600 in travel money, as well as a map that had the man’s telephone number on it. Fuentes-Espinoza, his friend, and the people in the van then set off on the trip to Kansas. ¶6 En route, Fuentes-Espinoza stopped at a gas station in Wheat Ridge, Colorado to get gas and to repair a broken taillight. As pertinent here, he went into the station to pay and gave the clerk a one-hundred-dollar bill, which apparently had been included in the travel money that Fuentes-Espinoza had received. The clerk determined that the bill was counterfeit and called the police. ¶7 An officer responded to the gas station, and as he approached, two individuals from the van took off running and, apparently, were not apprehended. The officer then arrived at the station, and after speaking with the clerk, he questioned Fuentes-Espinoza about the counterfeit bill and the people in the van. Fuentes-Espinoza told inconsistent stories about where he had obtained the counterfeit bill and where he was going, and the officer arrested him for passing the bill. ¶8 The officer then spoke with the people in the van and requested identification from them. After doing so, the officer spoke with his supervisor to report on his investigation and to get further instructions. The supervisor told the officer to bring the group to the police station, and the officer did so. The officer then called the human smuggling hotline, and the hotline sent representatives to the station to assist. ¶9 The People ultimately charged Fuentes-Espinoza with one count of forgery (for passing the counterfeit bill) and seven counts of human smuggling in violation of section 18-13-128. ¶10 Under section 18-13-128, a person commits a class 3 felony if, for the purpose of assisting another person to enter, remain in, or travel through the United States or the state of Colorado in violation of immigration laws, he or she provides or agrees to provide transportation to that person in exchange for money or any other thing of value. § 18-13-128(1), (2). Class 3 felonies carry a presumptive sentencing range of four to twelve years’ imprisonment. § 18-1.3-401(l)(a)(V)(A), C.R.S. (2017). ¶11 The ease proceeded to trial, and a jury ultimately acquitted Fuentes-Espinoza of forgery but convicted him on each of the human smuggling counts. The court subsequently sentenced him to concurrent four-year terms on each of the seven counts. ¶12 Fuentes-Espinoza appealed, and as pertinent here, he argued for the first time that federal law preempts section 18-13-128. He further asserted that section 18-13-128 required the People to prove that the people he had transported were present in violation of the immigration laws. The division rejected both arguments and, in a split decision, affirmed Fuentes-Espinoza’s convictions. Fuentes-Espinoza, ¶¶ 2-3, 61. ¶13 Regarding the preemption issue, the majority concluded that Fuentes-Espinoza’s arguments were not properly before the court because Fuentes-Espinoza had not made those arguments before the trial court. Id. at ¶¶ 10-16. ¶14 Regarding the question of what section 18-13-128 required the People to prove, the majority noted that “by including the actor’s purpose as an element of the crime, [section 18-13-128] emphasizes the actor’s intent, rather than the outcome of his or her actions.” Id. at ¶ 30. Thus, in the majority’s view, the People were required to prove only that the actor had the purpose of assisting another person to enter, remain in, or travel through the United States or Colorado in violation of immigration laws, and not that the passengers allegedly being smuggled were actually present in the United States or Colorado in violation of those laws. Id. at ¶¶ 27, 39. ¶15 Judge Casebolt dissented. In his view, the division was required to address Fuentes-Espinoza’s preemption argument, regardless of whether it was properly preserved, because the argument implicated the court’s subject matter jurisdiction. Fuentes-Espinoza, ¶¶ 63-64 (Casebolt, J., dissenting). Alternatively, Judge Casebolt stated that he would review the unpreserved claim for plain error. Id. at ¶¶ 66-67. ¶16 Turning then to the merits of the preemption claim, Judge Casebolt noted that the INA provides “a comprehensive framework to penalize the transportation, concealment, and inducement of unlawfully present aliens.” Id. at ¶ 76. In support of this position, he discussed a number of federal circuit court decisions in which the courts had concluded that the INA preempted the state smuggling laws before them under the doctrines of field and conflict preemption. Id. at ¶¶ 76-80. Based on the analyses set forth in those eases, Judge Casebolt concluded that (1) “the INA covers every aspect of the Colorado statute”; (2) in enacting the INA, Congress articulated a “clear purpose of ousting state authority from the field of transporting aliens”; and (3) section 18-13-128 “stands as an obstacle to accomplishing Congress’s objective of creating a comprehensive scheme governing the movement and harboring of aliens.” Id. at ¶¶ 85-87. Accordingly, he determined that the INA preempted section 18-13-128 under the doctrines of both field and conflict preemption and thus would have reversed Fuentes-Espinoza’s conviction. Id. at ¶¶ 82, 91. ¶1.7 Fuentes-Espinoza then sought, and we granted, certiorari. II. Analysis 1fl8'We begin by addressing the question of issue preservation and the applicable standard of review. We then discuss the pertinent principles of preemption law, as well as the Supreme Court’s decision in Arizona v. United States, 567 U.S. 387, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012), and other apposite federal authority. Finally, we apply the principles set forth in the foregoing authority and conclude that, like the statutes at issue in those cases, section 18-13-128 is preempted by the INA. A. Issue Preservation and Standard of Review ¶19 We have long made clear that we will exercise our discretion to review unpreserved constitutional claims when we believe that doing so would best serve the goals of efficiency and judicial economy. See, e.g., Hinojos-Mendoza v. People, 169 P.3d 662, 667 (Colo. 2007); People v. Wiedemer, 852 P.2d 424, 433 n.9 (Colo. 1993). Because we believe that reviewing Fuentes-Espinoza’s unpre-served preemption claim would serve those goals here, we exercise our discretion to do so. As a result, we need not consider whether Fuentes-Espinoza waived that claim, ¶20 The question of whether a federal statute preempts state law presents an issue of law that we review-de novo. See, e.g., Russo v. Ballard Med. Prods., 550 F.3d 1004, 1010 (10th Cir. 2008); People in Interest of C.Z„ 2015 COA 87, ¶ 10, 360 P.3d 228, 233. B. Preemption Principles and Pertinent Case Law ¶21 The Supremacy Clause of the United States Constitution provides that federal law “shall be the supreme Law of the' Land; and the Judges in every State shall be bound thereby, any Thing in' the Constitution or Laws of any State to the Contrary notwithstanding.” U.S. Const, art.- VI, cl. 2. As a result, it has long been settled that Congress has the power to preempt state law. Arizona, 567 U.S. at 399,132 S.Ct. 2492. ¶22 In determining whether federal statutes preempt state law, we are “guided by' two cornerstones.” Ga. Latino All. for Human Rights v. Governor of Ga., 691 F.3d 1250, 1263 (11th Cir. 2012) (quoting Wyeth v. Levine, 656 U.S. 555, 565, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009)). First, Congress’s purpose is the “ultimate touchstone in every preemption case.” Id. (quoting Wyeth, 555 U.S. at 565, 129 S.Ct. 1187). Second, we must presume that “the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.” Id. (quoting Wyeth, 555 U.S. at 565, 129, S.Ct. 1187). ¶23 The United States Supreme Court has recognized three. forms of federal preemption, namely, express, field, and conflict preemption. See Arizona, 567 U.S. at 399, 132 S.Ct. 2492. ¶24 A state law is expressly preempted when Congress “withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision.” Id. ¶25 Under the field preemption doctrine, in turn, “the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance.” Id.' Congress’s intent "to preempt a particular field may be inferred “from a framework of regulation ‘so pervasive ..-. that Congress left no room for the States to supplement it’ or where there is a ‘federal interest ... so dominant that the federal system will be assumed to preclude 'enforcement of state laws on the same subject.’ ” Id. (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). ¶26 Finally, under the conflict preemption doctrine, “state laws are preempted when they conflict with federal law.” Id Such a conflict exists (1) when compliance with both federal and state law is physically impossible and (2) in “those instances where the challenged state law ‘stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.’” Id. (quoting Hines v. Davidowitz, 312 U.S. 62, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). ¶27 In Arizona, 567 U.S. at 398-407, 132 S.Ct. 2492, the Supreme Court applied the foregoing principles in the context of the federal government’s regulation of, among other things, alien registration. That case is instructive here. ¶28 In Arizona, the federal government challenged (1) section 5(C) of an Arizona statute, which section made it a misdemeanor for “an unauthorized alien to knowingly apply for work, solicit work in a public place or perform work as an employee or independent contractor,” id. at 403, 132 S.Ct. 2492- (quoting Ariz. Rev. Stat. Ann. § 13-2928(C) (2017)); and (2) section 3 of the same Arizona statute, which prohibited the “willful failure to complete or carry an alien registration document ... in violation of [federal law],” id. at 400, 132 S.Ct. 2492 (quoting Ariz. Rev. Stat. Ann. § 13-1509(A) (2017)). The Supreme Court concluded that federal law preempted both sections. Id. at 403, 406-07, 132 S.Ct. 2492. ¶29 Regarding section 5(C), the Court began by noting that the federal Immigration Reform and Control Act of 1986 (“IRCA”), 8 U.S.C. § 1324a (2017), (1) made it illegal for employers knowingly to hire, recruit, refer, or continue to employ unauthorized workers and (2) required employers to verify the employment authorization status of prospective employees. Arizona, 567 U.S. at 404, 132 S.Ct. 2492. The Court observed that IRCA enforced these provisions through criminal or civil penalties on employers but that it imposed no criminal sanctions on employees unless they obtained employment through fraudulent means. Id. at 404-05, 132 S.Ct. 2492. Employees were principally subject only to civil penalties. Id. at 404, 132 S.Ct. 2492. ¶30 In light of the foregoing, the Court concluded that IRCA preempted section 5(C) because enforcing section 5(C) “would interfere with the careful balance struck by Congress with respect to unauthorized employment of aliens.” Id. at 406, 132 S.Ct. 2492. Notably, in reaching this conclusion, the Court recognized that section 5(C) “attempted] to achieve one of the same goals as federal law — the deterrence of unlawful employment.” Id. The Court determined, however, that section 6(C) “involve[d] a conflict in the method of enforcement” because it imposed “criminal penalties on aliens who seek or engage in unauthorized employment,” whereas IRCA had rejected such penalties. Id. Accordingly, section 5(C) posed “an obstacle to the regulatory system Congress chose” and, consequently, was preempted under the doctrine of conflict preemption. Id at 406-07,132 S.Ct. 2492. ¶31 The Court then discussed section 3 of the Arizona 'statute, which, as noted above, prohibited the “willful failure to complete or carry an alien registration document ... in violation of [federal law].” Id, at 400, 132 S.Ct. 2492. The Court held that this section, too, was preempted, based on the fact that Congress “ha[d] occupied the field of alien registration,” thus leaving no room for state regulation. Id. at 401,132 S.Ct, 2492. ¶32 In so ruling, the Court rejected Arizona’s argument that. section 3 was not preempted because “the provision ha[d] the same aim as federal law and adoptfed] its substantive standards,” Id. at 402, 132 S.Ct. 2492. In the Court’s view, “[permitting the State to impose its own penalties for the federal offenses here would conflict with the careful framework Congress adopted.” Id. Moreover, the penalties imposed by the state statute were inconsistent with those provided by federal law. Id..at 402-03, 132 S.Ct. 2492, For example, under federal law, the failure to carry registration papers was a misdemeanor that could be . punished by a fine, imprisonment, or a term of probation. Id. at 403, 132 S.Ct. 2492 (citing 8 U.S.C. § 1304(e) (2017); 18 U.S.C. § 3561 (2017)). The Arizona statute, in contrast, precluded probation as a possible sentence (and also prohibited the possibility of a pardon). Id. (citing Ariz. Rev. Stat. Ann. § 13-1509(D) (2017)). The Court concluded that these conflicts “simply underscore[d] the reason for field preemption.” Id. ¶33 Since the Supreme Court’s decision in Arizona, a number of federal circuit courts have applied the principles set forth therein to strike down state human smuggling statutes on preemption grounds. ¶34 For example, in Georgia Latino Alliance, 691 F.3d at 1256-57, the plaintiffs challenged several provisions of Georgia’s Illegal Immigration and Enforcement Act of 2011. That statute criminalized (1) transporting or moving an “illegal alien,” (2) concealing or harboring an “illegal alien,” and (3) inducing an “illegal alien” to enter the state of Georgia. Id. at 1263 (citing Ga. Code Ann. §§ 16-ll-200(b), 16-ll-201(b), 16-ll-202(b) (2017)). The Eleventh Circuit concluded that the INA likely preempted each of these provisions. Id. at 1267. ¶35 The court began by noting that “[t]he INA provides a comprehensive framework to penalize the transportation, concealment, and inducement of unlawfully present aliens.” Id. Within that framework, 8 U.S.C. § 1324(a)(l)(A)(ii)-(iv) provides that it is a federal crime for any person (1) to transport or move an unlawfully present alien within the United States; (2) to conceal, harbor, or shield an unlawfully present alien from detection; or (3) tu encourage or induce an alien to come to, enter, or reside in the United States. Ga. Latino All., 691 F.3d at 1263. In addition, 8 U.S.C. § 1324(c) permits local law enforcement officers to arrest those who violate these provisions of federal law, but under 8- U.S.C. § 1329, federal courts have exclusive jurisdiction to prosecute these crimes and to interpret the boundaries of the federal statute. Ga. Latino All., 691 F.3d at 1263-64. 8 U.S.C. § 1324(e) then mandates a community outreach program to “educate the public in the United States and abroad about the penalties for bringing' in and harboring aliens in violation of this section.” Ga. Latino All., 691 F.3d at 1264. And 8 U.S.C. § 1325 imposes civil and criminal penalties for unlawful entry into the United States, and 8 U.S.C. §§ 1323 and 1328 authorize criminal penalties for individuals who bring aliens into the United States and who import aliens for immoral purposes. Ga. Latino All., 691 F.3d at 1264. ¶36 Construing these provisions together, the Eleventh Circuit concluded that (1) “the federal government has clearly expressed more than a ‘peripheral concern’ with the entry, movement, and residence of aliens within the United States”; (2) “the breadth of these laws illustrates an overwhelmingly dominant federal interest in the field”; and (3) “Congress has provided a ‘full set of standards’ to govern the unlawful transport and movement of aliens.” Id. (quoting DeCanas v. Bica, 424 U.S. 351, 360, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976); Arizona, 567 U.S. at 401, 132 S.Ct. 2492). ¶37 The court further concluded that the Georgia statute presented an obstacle to the execution of the federal statutory scheme. Id. at 1265. In support of this conclusion, the court observed that the INA confines the prosecution of federal immigration crimes, to federal courts and limits the power to pursue those cases to the United States Attorney, whereas the Georgia statute allowed for parallel state enforcement that was “not conditioned on respect for the federal concerns or the priorities that Congress had explicitly granted executive agencies the authority to establish.” Id. This conflict was exacerbated by the fact that the state statute’s enticement provision created a new crime that was unparalleled in the federal scheme. Id at 1266. And, the court noted, the state statute’s provisions concerning harboring and transporting unlaydully present aliens constituted, an attempted complement to the INA that was “inconsistent with Congress’s objective of creating a comprehensive scheme governing the movement of aliens within the United States.” Id. ¶38 In light of the foregoing, the court determined that the plaintiffs had met their burden of showing a likelihood of success on their claim that Georgia’s statute was preempted by federal law. Id. at 1267; see also United States v. Alabama, 691 F.3d 1269,1285-88 (11th Cir. 2012) (relying heavily on Georgia Latino Alliance in concluding that the INA preempted a similar Alabama human smuggling provision). ¶39 In United States v. South Carolina, 720 F.3d 518, 530-32 (4th Cir. 2013), the Fourth Circuit reached a similar result in a case involving a South Carolina law making it a felony (1) to “transport, move or attempt to transport” or to “conceal, harbor or shelter” a person “with intent to further that person’s unlawful entry into the United States” or (2) to help that person avoid apprehension or detection. The court reasoned that the pertinent sections were preempted under field preemption principles “because the vast array of federal laws and regulations on this subject is ‘so pervasive ... that Congress left no room for the States to supplement it.’ ” Id. at 531 (quoting Arizona, 567 U.S. at 399, 132 S.Ct. 2492). Additionally, the court concluded that the sections were “conflict preempted” because “there is a federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.” Id (quoting Arizona, 567 U.S. at 399, 132 S.Ct. 2492).[2] ¶40 And in Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1022-29 (9th Cir. 2013), the Ninth Circuit determined that under both field and conflict preemption principles, the INA preempted an Arizona statute that attempted to criminalize transporting, concealing, harboring, or attempting to harbor an unauthorized alien if the offender knew or recklessly disregarded the fact that the person was in the country illegally. Regarding field preemption, the court agreed with the cases discussed above that the breadth of the federal laws governing the movement and harboring of aliens reflects the federal government’s overwhelmingly dominant federal interest in that field. Id. at 1026. Regarding conflict preemption, the court concluded that Arizona’s statute (1) provided additional and different state penalties for harboring unauthorized aliens than did the INA and thus disrupted Congress’s carefully calibrated scheme, (2) divested federal authorities of the exclusive power to prosecute crimes concerning the transportation or harboring of unauthorized aliens, and (3) criminalized conduct not covered by the federal harboring provision. Id. at 1026-28. Accordingly, the Arizona statute stood “as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress” and therefore was preempted under the conflict preemption doctrine. Id. at 1026,1029. ¶41 With the foregoing legal principles and authorities in mind, we turn to the argument now before us. C. Application ¶42 Here, Fuentes-Espinoza contends that the INA preempts section 18-13-128 under both field and conflict preemption principles. We agree. 1. Field Preemption ¶43 With respect to field preemption, as noted above, we may infer Congress’s intent to preempt a particular field when it has created “a framework of regulation ‘so pervasive ... that Congress left no room for the States to supplement it’ or where there is a ‘federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.’ ” Arizona, 567 U.S. at 399, 132 S.Ct. 2492 (quoting Rice, 331 U.S. at 230, 67 S.Ct. 1146). For several reasons, we conclude that such a framework of regulation and such a federal interest exist here. ¶44 First, we note, as did the Supreme Court in Arizona, 567 U.S. at 394-95, 132 S.Ct. 2492, that “[t]he Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens,” and “[Qederal governance of immigration and alien status is extensive and complex.” ¶45 Second, we agree with the federal circuit court cases discussed above that the INA established a comprehensive framework for penalizing the transportation, concealment, and inducement of unlawfully present aliens. See Valle del Sol, 732 F.3d at 1026; South Carolina, 720 F.3d at 531; Ga. Latino All., 691 F.3d at 1263. ¶46 For example, 8 U.S.C. § 1324, entitled, “Bringing in and harboring certain aliens,” provides: [Any person who] knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law [shall be punished as provided in subparagraph (B) ]. 8 U.S.C. § 1324(a)(1)(A)(ii). ¶47 This statute also (1) criminalizes .the aiding or abetting of the above-mentioned conduct, 8 U.S.C. § 1324(a)(l)(A)(v)(II); (2) creates an extensive punishment scheme, see 8 U.S.C. § 1324(a)(l)(B)(i)-(iv); (3) discusses evidentiary' considerations for determining whether a violation has occurred, 8 U.S.C. § 1324(b)(3); and (4) mandates the creation of an outreach program to educate the public on the penalties for violations of the foregoing provisions, 8 U.S.C. § 1324(e). ¶48 In addition, the INA imposes civil and criminal penalties on aliens themselves for unlawful entry into the United States, see 8 U.S.C, § 1325, and authorizes criminal penalties for individuals who bring aliens into the United States, aid or assist the entry of inadmissible aliens, or import aliens for immoral purposes, see 8 U.S.C. §§ 1323, 1327, 1328. . • , ¶49 Lastly, 8 U.S.C. § 1324(e) expressly permits local law enforcement officers to arrest those who violate that statute’s provisions, but 8 U.S.C. § 1329 expressly grants to United States district courts jurisdiction of all causes brought by the. United States that arise under the pertinent subsection and provides that “[i]t shall be the duty of the United States attorney of the proper district to prosecute every such suit when brought by the United States.” ■ ¶50 In our view, when read together, these provisions evince Congress’s intent to maintain a uniform, federally regulated framework for criminalizing and regulating the transportation, concealment, and inducement of unlawfully present aliens, and this framework is so .p.ervasive that it has left no room for the states to supplement it. See Arizona, 567 U.S. at 399, 132 S.Ct. 2492. ¶51 Accordingly, we conclude that the INA preempts section 18-13-128 under the doctrine of field preemption. 2. Conflict Preemption ¶52 We further conclude that the INA preempts section'18-13-128 under the doctrine of conflict preemption. ¶53 As noted above, a state law is preempted under conflict preemption principles when, as pertinent here, the challenged state law stands as an obstacle to the accomplishment and execution of Congress’s purposes and objectives in enacting a federal statute. See. Arizona, 567 U.S. at 399, 132 S.Ct. 2492. Here, for several reasons, we conclude that.section 18-13-128 stands as an obstacle, to the accomplishment and execution of Congress’s purposes and objectives in enacting the INA’s various provisions related to the transportation, concealment, and inducement of unlawfully present aliens. ¶54 First, section 18-13-128 conflicts with the INA’s carefully delineated scheme for punishing conduct related to the transportation of unlawfully present aliens. For example, a violation of section 18-13-128 carries a minimum sentence of four years and a maximum sentence of twelve years. See § 18-13-128(2) (classifying a violation of the statute as a class 3 felony); § 18-1.3-401(l)(a)(V)(A) (providing the presumptive penalty l’ange for class 3 felonies). In contrast, many of the INA’s anti-smuggling provisions do not mandate a minimum term of imprisonment. See, 8 U.S.C. § 1324(a)(1)(B)(i)-(iv) (providing for fines as one penalty option). Indeed, a violation of the INA’s anti-smuggling provisions can result in both a lesser minimum penalty (e.g., a fine) and a lesser maximum penalty than section 18-13-128⅛. presumptive four- to twelve-year sentencing range. See 8 U.S.C. § 1324(a)(l)(B)(i)-(ii), (a)(2)(A), (a)(2)(B). , ¶55 Similarly, unlike section 18-13-128, the INA allows offenders who act for the purpose of commercial advantage or private financial gain to be punished, differently from those who do not. Compare 8 U.S.C. § 1324(a)(l)(B)(i),, with 8 - U.S.C. § 1324(a)(l)(B)(ii); and compare 8 U.S.C. § 1324(a)(2)(A), with 8 U.S.C. § 1324 (a)(2)(B)(n). ¶56 The INA also (1) distinguishes between transportation within the United States and transportation into the United States, see 8 U.S.C, §§ 1324(a)(l)(B)(i)-(ii), 1324(a)(2)(A), and (2) lists circumstances (e.g., knowledge of an alien’s intent to commit certain offenses against the United States or a state and the fact that the alien was not immediately on arrival brought and presented to an appropriate immigration officer) that may warrant the imposition of greater or ■ lesser penalties, see 8 U.S.C. § 1324(a)(2)(A), § 1324(a)(2)(B)(i)-(iii). Neither section 18-13-128 nor Colorado’s general sentencing statutes specifically identify such circumstances as grounds to impose greater or lesser penalties in the context of alien smuggling. ¶57 These differing provisions for punishment stand as an obstacle to the accomplishment and execution of Congress’s full purposes and objectives' not just because they are different, but because they undermine Congress’s careful calibration of punishments for the crimes proscribed. See Valle del Sol, 732 F.3d at 1027 (explaining that the provision of additional and different'State-penalties under Arizona’s -statute for harboring unauthorized aliens disrupts the congressional calibration and creates a conflict with Congress’s legislative plan). ¶58 Second, section 18-13-128 criminalizes a different range of conduct than does the INA Under the INA a person commits alien smuggling if, “knowing or in reckless disregard of the, fact that an alien has come to, entered, or remains in the United States in violation of law, [that person] transports, or moves or attempts to transport or move such alien within the United States.” 8 U.S.C. § 1324(a)(l)(A)(ii). (emphasis added). This language affirmatively requires a defendant to know or recklessly disregard a fact, namely, that the smuggled person “has come to, entered, or remains in the United States in violation of. law.” Id As a result, under federal law, the prosecution must prove that “the alien was present in violation of law.” United States v. Franco-Lopez, 687 F.3d 1222, 1226 (10th Cir. 2012); see also United States v. Hernandez, 913 F.2d 568, 569 (8th Cir. 1990) (per curiam) (Among other things, “[t]he government was required to prove ... the alien was in the United States in violation of the law.”); United States v. Avarado-Machado, 867 F.2d 209, 212 (5th Cir. 1989) (“The aliens’ status is an element of the crime of transporting illegal aliens.”). ¶59 In contrast, as the People assert and the division below determined, Fuentes-Espinoza, ¶¶ 25-39, section 18-13-128 criminalizes certain behavior of people who act with the purpose of assisting others to enter, remain -in, or travel through the United States or Colorado in violation of immigration laws. Specifically, as noted above, that statute provides, in pertinent part: A person commits smuggling of humans if, for the purpose of assisting another person to enter, remain in, or travel through the United States or the state of- Colorado in violation of immigration laws, he or she provides or agrees to provide transportation to that person in exchange for money or any other thing of value. § 18-13-128(1) (emphasis added). ¶60 Under the plain language of this statute, a person who acts with- the pertinent purpose could be convicted even. absent a finding that the alien whom he or she was assisting was actually violating immigration laws. As a result, although, as the People argue, both the federal and state'statutes criminalize certain conduct by human smugglers, section 18-13-128 adds a new set of prohibited activities and thus “sweeps more broadly than -its federal counterpart.” See Valle del Sol, 732 F.3d at 1028-29. In doing so, the Colorado statute disrupts Congress’s objective of creating a uniform scheme of punishment because some smuggling activities involving unauthorized aliens áre now punishable in Colorado but not elsewhere. See id. ¶61 For these reasons, we conclude that, like the human smuggling statutes invalidated in a, number of recent federal circuit court opinions, section 18-13-128 is preempted by the INA under principles of conflict preemption. ¶62 We are not persuaded otherwise by the People’s contention that any differences between section 18-13-128 and the INA are minor and permissible because section 18-13-128 still “mirrors federal objectives and furthers a legitimate state goal.” Plyler v. Doe, 457 U.S. 202, 225, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). As the Supreme Court has observed, “The fact of a common end hardly neutralizes conflicting means.” Crosby v. Nat’l Foreign Trade Council, 530 U.S. 363, 379, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000); see also Amalgamated Ass’n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge, 403 U.S. 274, 287, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971) (“Conflict in technique can be fully as disruptive to the system Congress erected as conflict in overt policy.”). Indeed, in Arizona, 567 U.S. at 406, 132 S.Ct. 2492, the Court explicitly recognized that although the Arizona statute at issue “attempt[ed] to achieve one of the same goals as federal law — the deterrence of unlawful employment” — this was not enough to save it from preemption because the state statute still involved “a conflict in the method of enforcement.” ¶63 The same is true here: Although section 18-13-128 might “mirror” some of the goals and objectives articulated in the INA, it criminalizes distinct conduct and provides for greater penalties than does the INA. Accordingly, section 18-13-128 stands as an obstacle to (1) the calibration of penalties articulated by Congress for punishing the transportation, concealment, and inducement of unlawfully present aliens and (2) the uniformity of enforcement contemplated by the federal scheme. ¶64 We likewise are unpersuaded by the People’s attempt to frame the purpose of the INA’s human smuggling provisions as being primarily aimed at protecting aliens from the dangers of human smuggling and not at pre-ating a uniform system to penalize the transportation, concealment, and inducement of unlawfully present aliens. Although, as the People assert, 8 U.S.C. § 1324(l)(A)(ii) criminalizes conduct by human smugglers, that provision also .reflects Congress’s concern with aliens’ unlawful conduct. ¶65 Specifically, as noted above, that section provides that any person who knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports or moves or attempts to transport or move such an alien within the United States by means of transportation or otherwise, in furtherance of such violation of law [shall be punished as provided in subparagraph (B) of that statute]. (Emphasis added.) ¶66 In our view, this language reveals a principal concern with the alien’s unlawful conduct. Thus, the-statute punishes third-parties for acting “in furtherance of’ the alien’s unlawful acts. We see nothing in this statutory language, however, indicating a congressional intent to protect aliens from human smuggling. III. Conclusion ¶67 For these reasons, we conclude that the INA preempts section 18-13-128 under the doctrines of field and conflict pi'eemption. Accordingly, the judgment of the court of appeals is reversed, and the case is remanded with instructions that Fuentes-Espinoza’s . convictions under section 18-13-128 be vacated and for further proceedings consistent with this opinion. JUSTICE EID dissents, and JUSTICE COATS and JUSTICE BOATRIGHT join in the dissent This opinion was originally assigned to another Justice but was reassigned to Justice Gabriel on June 15, 2017. .Specifically, we granted certiorari to review the following issues: 1. Whether the Immigration and Nationality Act preempts Colorado’s human smuggling statute and the trial court therefore was without jurisdiction. 2. Whether the court of appeals erred in holding that the appellant waived the claim that the Colorado human smuggling statute is preempted by the Federal Immigration and Nationality Act. 3. Whether Colorado’s human smuggling statute requires the prosecution to prove that the defendant was, in fact, engaged in smuggling humans in violation of the immigration law. . We note that the court deemed this a conflict preemption analysis, although Arizona included such an analysis under the rubric of field preemption.