The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 12, 2026

## 2026COA14

**No. 25CA0836, *Town of Superior v. Board of County Commissioners of Jefferson County* — Constitutional Law — Federal Supremacy — Preemption; Remedies — Injunctive Relief**

A division of the court of appeals holds that federal law preempts a claim for injunctive relief requiring an airport to ban certain aircraft operations to abate aircraft noise. Under *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 638 (1973), state and local regulation of aircraft noise is preempted by federal law. And although the proprietor of an airport retains authority to impose certain noise restrictions in its role as airport proprietor, a state court may not order it to do so because such an injunction would constitute impermissible local control over aircraft noise.

The division remands the case to the district court to determine whether the plaintiffs' request for an injunction to abate lead emissions is preempted by the Clean Air Act, 42 U.S.C. § 7573.

COLORADO COURT OF APPEALS     **2026COA14**

Court of Appeals No. 25CA0836
Boulder County District Court No. 24CV30221
Honorable Stephen E. Howard, Judge

Town of Superior, a municipal corporation of the State of Colorado, and the
Board of County Commissioners of the County of Boulder, Colorado, a county
government in the State of Colorado,

Plaintiffs-Appellants,

v.

The Board of County Commissioners of the County of Jefferson, Colorado, as
successors in interest to the Jefferson County Airport Authority, and Erick
Dahl, in his official capacity as Airport Director of the Rocky Mountain
Metropolitan Airport,

Defendants-Appellees.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE SCHOCK
Grove and Yun, JJ., concur

Announced March 12, 2026

Greenberg Traurig, LLP, John A. Wharton, Andrew D. Barr, Elliot Anderson,
Denver, Colorado, for Plaintiffs-Appellants

Kaplan Kirsch LLP, W. Eric Pilsk, Steven L. Osit, Denver, Colorado, for
Defendants-Appellees

¶ 1     Federal law generally preempts state and local regulation of aircraft noise. *See City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 638 (1973). But an airport proprietor retains the authority to impose noise restrictions at its airport — even when the proprietor is a governmental entity. *See Arapahoe Cnty. Pub. Airport Auth. v. Centennial Express Airlines, Inc.*, 956 P.2d 587, 595 (Colo. 1998). The question in this case is whether a state court, consistent with principles of federal preemption, may order the proprietor to exercise that authority. We conclude that it cannot.

¶ 2     Plaintiffs, the Town of Superior (Superior) and the Board of County Commissioners of Boulder County, allege that certain aircraft operations at the nearby Rocky Mountain Metropolitan Airport (the Airport) cause excessive noise and hazardous lead exposure for their residents. They sued defendants, the Board of County Commissioners of Jefferson County and Erick Dahl, in his official capacity as Airport Director of the Airport (collectively, Jefferson County), under a public nuisance theory, requesting an injunction requiring them to prohibit such operations. The district court dismissed the action on grounds of federal preemption.

¶ 3     We agree with the district court that plaintiffs' request for an injunction to abate aircraft noise is preempted by the pervasive federal scheme of aviation noise regulation, as recognized in *City of Burbank*. But *City of Burbank* does not resolve the pollution-based component of plaintiffs' claim. And the district court did not address Jefferson County's argument that the federal Clean Air Act, 42 U.S.C. § 7573, preempts a ban on aircraft operations to abate lead emissions.

¶ 4     We therefore (1) affirm the order to the extent it dismissed plaintiffs' request for an injunction to abate aircraft noise; (2) reverse the order to the extent it dismissed plaintiffs' request for an injunction to abate lead emissions; and (3) remand the case to the district court for further consideration of whether the lead emissions portion of plaintiffs' claim is preempted by federal law.

## I.     Background

¶ 5     The Airport is located in, and owned and operated by, Jefferson County. Superior is less than a mile away, primarily in Boulder County. Aircraft departing the Airport from its primary runways fly over Superior and Boulder County upon takeoff.

¶ 6     Four flight schools operate at the Airport using piston engine aircraft — a type of small plane that is generally used for flight training or recreation.  Unlike most other types of aircraft, piston engine aircraft typically use fuel that contains lead.

¶ 7     A common flight training maneuver is called a "touch-and-go."  In a touch-and-go operation, an aircraft lands and immediately takes off again without stopping.  The operation is often repeated several times within a single flight.  Because an aircraft gets closer to the end of the runway in a touch-and-go than in a typical takeoff, the aircraft flies over Superior at a lower altitude and lower speed than it otherwise would.  Plaintiffs allege that this results in excessive noise and hazardous lead exposure for their residents.

¶ 8     Plaintiffs sued Jefferson County for causing a public nuisance, seeking to enjoin touch-and-go operations by piston engine aircraft at the Airport.  Jefferson County moved to dismiss the complaint under C.R.C.P. 12(b)(5) based on federal preemption.  Citing *City of Burbank*, 411 U.S. at 638, it argued that federal law preempts state and local regulation of aircraft operations, noise levels, and emissions.  Plaintiffs responded that their requested injunction fell under the "proprietor's exception," which they argued allows airport

proprietors to impose restrictions to abate a nuisance that a state or local government could not impose pursuant to its police power.

¶ 9 The district court granted the motion to dismiss. It concluded that federal law preempts any local or state limitation on aircraft flight operations, including as to noise or pollution. And it ruled that a court order enjoining touch-and-go operations would constitute such a local regulation. Addressing plaintiffs' argument about Jefferson County's proprietary rights, the court explained that "the ability of [the district] court to issue an injunction is a different issue than whether a proprietor can choose to limit noise or pollution. . . . [T]he fact that the defendants could impose noise restrictions does not mean that the court can order them to do so."

## II. Noise Abatement

¶ 10 Plaintiffs contend that the district court erred by concluding that their claim for injunctive relief is preempted by federal law governing aviation noise. Although they concede that federal law preempts state and local governments' use of their police powers to regulate airport noise, they argue that Jefferson County has the authority as the airport proprietor to impose noise restrictions. From this premise, they posit that the district court could order

4

Jefferson County to do what it has the power to do on its own.  It is this final step in plaintiffs' argument with which we disagree.

### A.    Preemption Principles and Standard of Review

¶ 11    The Supremacy Clause of the United States Constitution gives Congress the power to preempt state law.  *Cnty. Comm'rs v. Suncor Energy USA, Inc.*, 2025 CO 21, ¶ 33, *cert. granted*, ___ U.S. ___, 2026 WL 490537 (Feb. 23, 2026) (No. 25-170).  In determining whether state law is preempted, the "ultimate touchstone" is Congress's intent.  *Fuentes-Espinoza v. People*, 2017 CO 98, ¶ 22 (citation omitted).  We will not presume that federal law preempts "the states' historic police powers" — particularly in "a field that states have traditionally occupied" — unless "the law reveals Congress's clear and manifest purpose to do so."  *Suncor*, ¶ 34.

¶ 12    There are three types of preemption.  First, "state law is expressly preempted when a federal statute contains an express preemption provision."  *Id.* at ¶ 36.  Second, field preemption occurs when "Congress intended the federal government to occupy a field of law exclusively," which may be demonstrated by (1) a framework of federal regulation "so pervasive" that it leaves "no room for states to supplement it," or (2) a federal interest "so dominant that the

federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* at ¶ 37. Third, conflict preemption applies when a state law "actually conflicts with federal law" or "stands as an obstacle to the accomplishment and execution of Congress's purposes and objectives." *Id.* at ¶ 38.

¶ 13 We review de novo the district court's ruling on a C.R.C.P. 12(b)(5) motion to dismiss. *Id.* at ¶ 25. In doing so, we accept all material factual allegations in the complaint as true and view them in the light most favorable to the plaintiff to determine whether the complaint states a plausible claim for relief. *Id.* Federal preemption is an issue of law that we review de novo. *Fuentes-Espinoza,* ¶ 20.

### B. Preemption of Local Noise Regulations

¶ 14 Plaintiffs do not seriously contest the premise that federal law preempts state and local aviation noise restrictions as a general matter. Although they dispute the source and scope of that preemption, they acknowledge that state and local governments cannot regulate aircraft noise via their police powers. We agree.

¶ 15 The Federal Aviation Act of 1958 gives the United States government "exclusive sovereignty of airspace of the United States." 49 U.S.C. § 40103(a)(1). In *City of Burbank,* the Supreme Court

held that this and other federal statutes create a "comprehensive scheme of federal control of the aircraft noise problem" that preempts state and local control. 411 U.S. at 629, 633. The Court noted the lack of any express statutory preemption provision. *Id.* at 633. It also recognized that noise control is "deep-seated in the police power of the States." *Id.* at 638. But it nevertheless concluded that the federal government's "pervasive control" over aircraft noise "leave[s] no room for . . . local controls." *Id.*[1]

¶ 16      Since *City of Burbank,* courts have consistently held that state and local aviation noise restrictions are preempted by federal law. *See, e.g., Friends of E. Hampton Airport, Inc. v. Town of East Hampton,* 841 F.3d 133, 139 (2d Cir. 2016); *S.D. Unified Port Dist. v.*

---

[1] The parties dispute the applicability and relevance of other federal statutes relating to aircraft operations and noise. *See* 49 U.S.C. § 41713(b)(1) (prohibiting state or local law "related to a price, route, or service of an air carrier"); 49 U.S.C. §§ 47521(3), 47523, 47524 (providing for the creation of a "national aviation noise policy" for certain aircraft); 49 U.S.C. § 47107(a)(1) (conditioning grant funds on assurance that airport "will be available for public use on reasonable conditions and without unjust discrimination"). Because *City of Burbank v. Lockheed Air Terminal Inc.,* 411 U.S. 624, 638 (1973), unequivocally holds that local aviation noise regulations are preempted, and because plaintiffs do not attempt to challenge or distinguish that holding, we need not address the extent to which subsequent legislation reinforces that holding.

*Gianturco*, 651 F.2d 1306, 1315 n.22 (9th Cir. 1981) ("The proposition that the federal government has preempted the area of flight control regulation to eliminate or reduce noise has been accepted without contrary authority by numerous courts which have addressed the subject."); *see also French v. Pan Am Express, Inc.,* 869 F.2d 1, 6 (1st Cir. 1989) (noting that *City of Burbank* held that "aircraft noise was wholly subject to federal hegemony, thereby preempting state or local enactments in the field"); *cf. Bieneman v. City of Chicago,* 864 F.2d 463, 472-73 (7th Cir. 1988) (holding that "regulation" is preempted but allowing limited claims for damages).

¶ 17 In light of *City of Burbank*, it appears to be beyond dispute that a state law or local ordinance prohibiting touch-and-go operations at the Airport to abate aircraft noise would be preempted by federal law. Indeed, plaintiffs make no argument to the contrary.

### C. Proprietor's Exception

¶ 18 There is also no real dispute about the second step in our analysis: A governmental entity that owns and operates an airport may, in its role as airport proprietor, impose restrictions to regulate noise that it could not impose through the exercise of its police powers. *See Arapahoe Cnty. Pub. Airport Auth.*, 956 P.2d at 595.

¶ 19    This so-called "proprietor's exception" emanates from an oft-cited footnote in *City of Burbank*.  In that footnote, the Court quoted a letter from the Secretary of Transportation, which stated that proposed federal legislation governing aviation noise control would "not affect the rights of a State or local public agency, as the proprietor of an airport, from issuing regulations or establishing requirements as to the permissible level of noise which can be created by aircraft using the airport."  *City of Burbank*, 411 U.S. at 635 n.14 (citation omitted).  The Court went on to clarify that a municipality's authority "as a landlord is not necessarily congruent with its police power."  *Id.*

¶ 20    In *Arapahoe County Public Airport Authority*, the Colorado Supreme Court recognized the "proprietor's exception," citing *City of Burbank* and other federal case law for the proposition that "because they may be held liable for excessive noise, airport proprietors may restrict aircraft operations to accommodate permissible noise levels under the proprietor's exception."  956 P.2d at 595.  Other courts have likewise confirmed this proprietary authority.  *See, e.g., Nat'l Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81, 88-89 (2d Cir. 1998); *Alaska Airlines, Inc. v. City*

*of Long Beach*, 951 F.2d 977, 982 (9th Cir. 1991).  And it has been codified to a large degree in 49 U.S.C. § 41713(b)(3), which provides that federal preemption of laws relating to an air carrier's price, route, or service "does not limit a State [or] political subdivision of a State . . . from carrying out its proprietary powers and rights."

¶ 21    Plaintiffs devote much of their appellate briefs to arguing that the proprietor's exception survives and is not preempted by other federal statutes.  But that much is clear, and Jefferson County does not argue otherwise.  Instead, Jefferson County primarily disputes the *scope* of the proprietor's exception and its applicability to the circumstances of this case.  Citing the admonition that an airport proprietor's role in regulating noise is "extremely limited," *Friends of E. Hampton Airport*, 841 F.3d at 139 (citation omitted), Jefferson County suggests that it could not unilaterally ban touch-and-go operations at the Airport.  It argues that such a ban could infringe on other federal laws and the terms of its federal grant agreements.

¶ 22    We need not decide whether the proprietor's exception would *permit* Jefferson County to prohibit touch-and-go operations at the Airport because it did not do so.  The question before us, which we turn to below, is whether the district court could *require* it to

implement such a prohibition. We agree with the district court that these are two different questions. We therefore assume, without deciding, that Jefferson County has the authority as the airport proprietor to prohibit touch-and-go operations if it chooses to do so.

### D. Injunctive Relief

¶ 23 So far, we have done little more than lay out two baseline premises on which the parties fundamentally agree — (1) state and local governments cannot regulate aviation noise, and (2) airport proprietors can (at least to some degree). Where the rubber hits the road is on the conclusion that plaintiffs draw from those premises. Specifically, they argue that because Jefferson County could ban touch-and-go operations at the Airport as a noise abatement measure, the district court can order it to do so. We disagree.

¶ 24 An injunction is not a restriction imposed by the airport proprietor. It is a restriction imposed on the proprietor by the district court. A state court can no more impose such a restriction in an area of federal preemption than can a state or local legislative body. *See Brown v. Kerr-McGee Chem. Corp.*, 767 F.2d 1234, 1242 (7th Cir. 1985) (holding that request for injunctive relief based on state law was preempted where it would interfere with federal

11

regulation); *cf. Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 515, 522 (1992) (holding that a federal statute barring any "requirement or prohibition . . . imposed under State law" preempted state "common law as well as statutes and regulations" (citation omitted)).

¶ 25    In other words, whatever authority Jefferson County has to restrict touch-and-go operations at the Airport, the state — whether through the executive, legislative, or judicial branch — cannot compel it to adopt such a restriction. *See Williams v. Marinelli*, 987 F.3d 188, 198 (2d Cir. 2021) ("Although preemption often applies to state statutes, preemption can also invalidate actions of state executive branch officials and state courts that conflict with federal law."); *cf. In re Marriage of Anderson*, 252 P.3d 490, 494 (Colo. App. 2010) (holding that federal preemption divests state courts of power to enforce private agreements that are inconsistent with federal law). To do so would be to exert state governmental control over aircraft noise — a result *City of Burbank* forbids. 411 U.S. at 638.

¶ 26    On this point, we are persuaded by *Northeast Phoenix Homeowners' Ass'n v. Scottsdale Municipal Airport*, 636 P.2d 1269 (Ariz. Ct. App. 1981). In that case, individuals living under the flight path of low-flying aircraft sued the municipality that owned

12

and operated the nearby airport under a nuisance theory, seeking injunctive relief to curtail the noise. *Id.* at 1270-72. As in this case, the plaintiffs argued that the requested injunction fell within the proprietor's exception to federal preemption. *Id.* at 1273.

¶ 27 In rejecting this argument, the court first noted that the proprietor's exception allows "airport proprietors, whether they be private or public entities, to *voluntarily* adopt noise-related regulations regarding the operation of their airports and the aircraft using their airports." *Id.* (emphasis added). But it explained that "rules mandated by a court through its injunctive powers would in no sense emanate from the airport proprietor." *Id.* at 1275. Rather, such "judicially made rules and regulations" contravene *City of Burbank*'s preemption holding, just as do state and local legislation. *Id.* Thus, although an airport proprietor may choose to adopt noise mitigation measures, a state court may not order it to do so based on state law. *Id.*; *see also Krueger v. Mitchell*, 332 N.W.2d 733, 740 (Wis. 1983) ("[I]njunctions prohibiting such proprietorial decisions are completely preempted . . . ."). We agree with this analysis.

¶ 28 Plaintiffs' barrage of attacks on *Scottsdale Municipal Airport* all miss their mark. For example, plaintiffs dispute its characterization

13

of an injunction as a "judicially made" regulation, but in doing so, they elide the distinction between what an airport proprietor has the legal authority to do and what a state court can make it do. They chide *Scottsdale Municipal Airport* for failing to clearly identify the source of federal preemption, but federal preemption in the area of aviation noise is well established. *See City of Burbank*, 411 U.S. at 638. And they note that *City of Burbank* concerned legislation rather than an injunction, but they fail to explain why this matters when federal law "leave[s] no room for . . . local controls."[2] *Id.*

¶ 29    They also criticize *Scottsdale Municipal Airport* for distinguishing damages from injunctive relief, 636 P.2d at 1277,

---

[2] Plaintiffs' contention that Congress must expressly preempt state injunctive relief is inconsistent with *City of Burbank*'s holding that preemption in this area is premised on field preemption. *City of Burbank*, 411 U.S. at 633. No express preemption provision is required when Congress has preempted the field. *Cnty. Comm'rs v. Suncor Energy USA, Inc.*, 2025 CO 21, ¶ 37, *cert. granted*, ___ U.S. ___, 2026 WL 490537 (Feb. 23, 2026) (No. 25-170).

even though damages are not at issue in this case.[3]  Along the same lines, they point out that *Scottsdale Municipal Airport* relied on a case that was later overruled to the extent it precluded a claim *for damages* — a point that, again, is immaterial since this case does not involve damages.  *See Luedtke v. County of Milwaukee*, 521 F.2d 387, 390-91 (7th Cir. 1975), *cited with approval in Scottsdale Mun. Airport*, 636 P.2d at 1275, *overruled in part by Bieneman*, 864 F.2d at 472 (overruling *Luedtke* to the extent it holds that damages are preempted, but distinguishing damages from "regulation").

¶ 30    None of these attempts to discount or distinguish *Scottsdale Municipal Airport* undermine its fundamental holding that a state court cannot do through an injunction what a state legislative body could not — a conclusion that flows from *City of Burbank* itself.

¶ 31    Indeed, plaintiffs do not cite a single case in which a state court has enjoined aircraft flight operations — or required an

---

[3] Several cases have drawn a distinction between a claim for injunctive relief and a claim for damages, with only the former being preempted.  *See, e.g.*, *Bieneman v. City of Chicago*, 864 F.2d 463, 472-73 (7th Cir. 1988); *Krueger v. Mitchell*, 332 N.W.2d 733, 739-40 (Wis. 1983); *cf. Suncor*, ¶ 59 (rejecting contention that claim for damages amounted to regulation).  Because plaintiffs do not seek damages, we express no opinion as to whether such a claim would be preempted.

airport proprietor to do so — to abate aviation noise. Instead, the cases on which they rely generally involve one of three scenarios that are not implicated in this case: (1) a restriction imposed by the airport proprietor itself, *see Nat'l Helicopter*, 137 F.3d at 89; *Alaska Airlines*, 951 F.2d at 982; *British Airways Bd. v. Port Auth.*, 558 F.2d 75, 83-84 (2d Cir. 1977); (2) a claim for damages, *see Bieneman*, 864 F.2d at 472; *Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 603 P.2d 1329, 1335-36 (Cal. 1979); or (3) a land use regulation prohibiting the use of property as an airport, *see Aviation Cadet Museum, Inc. v. Hammer*, 283 S.W.3d 198, 201 n.2, 202-03 (Ark. 2008); *Emerald Dev. Co. v. McNeill*, 120 S.W.3d 605, 609 (Ark. Ct. App. 2003).[4] To the extent any of these cases could be read to suggest that a state court could order an airport

---

[4] The closest plaintiffs come to invoking an on-point case is *Wood v. City of Huntsville*, 384 So. 2d 1081, 1084-85 (Ala. 1980), which they cite once in a footnote string cite. But that case too involved an injunction on the *use of property* (as a helipad) — not on particular aircraft operations. *See id.* at 1083 (noting that state and local governments retain control over "ground usage"). To the extent its holding that "municipalities are authorized to regulate the operation of private airports," *id.* at 1084, would allow local regulation of the operations at issue, even plaintiffs do not go that far.

16

proprietor to restrict flight operations to mitigate noise — and we do not think they can — we disagree for the reasons above.

¶ 32    Finally, plaintiffs rely on 49 U.S.C. § 40120(c), which provides that "[a] remedy under [the Federal Aviation Act] is in addition to any other remedies provided by law."  But this provision simply preserves *remedies* for otherwise actionable wrongs — such as acts that violate federal standards or that lie outside the purview of federal control.  *See Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 375-76 (3d Cir. 1999) ("Federal preemption of the standards of care can coexist with state . . . tort remedies."); *Bieneman*, 864 F.2d at 473 (allowing common law remedies for "operations that offend federal law, or that federal norms do not govern").  It does not allow the state — whether by legislative or judicial fiat — to impose a separate state law standard in an area of federal preemption.

¶ 33    Thus, insofar as plaintiffs' request for injunctive relief sought a state-law-based restriction on aircraft noise, the district court correctly concluded that the claim was preempted by federal law.

### III.    Clean Air Act

¶ 34    Plaintiffs also alleged that their requested injunction was necessary to abate the lead pollution caused by piston engine

17

aircraft performing touch-and-go operations at the Airport. The district court did not separately address this aspect of plaintiffs' claim, instead lumping it together with the noise claim and concluding that federal law preempts all state or local limitations on aircraft flight operations, including for noise *or* pollution.

¶ 35    But *City of Burbank* is limited to federal preemption of state and local aviation *noise* control. 411 U.S. at 629, 633, 638. It says nothing about federal preemption of state and local aviation *pollution* control. And Jefferson County does not otherwise develop any argument on appeal that federal law preempts that field.

¶ 36    Jefferson County contends that plaintiffs' emissions claim is *expressly* preempted by the Clean Air Act, 42 U.S.C. § 7573, which precludes any state or local "standard respecting emissions of any air pollutant from any aircraft or engine thereof" that differs from a federal standard. But although Jefferson County argued this point in its motion to dismiss, the district court did not address it.[5]

---

[5] We reject plaintiffs' argument that Jefferson County waived its argument that plaintiffs' claim is preempted by the Clean Air Act. Jefferson County raised the issue in its motion to dismiss "to such a degree that the court ha[d] the opportunity to rule on it." *Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21.

18

¶ 37    We recognize that we have discretion to address the issue in the first instance, but for two reasons, we decline to do so.  *See LTCPRO, LLC v. Johnson*, 2024 COA 123, ¶ 46.  First, the parties' briefing of the issue in the district court and on appeal is scant, with both parties effectively treating it as a tag-along issue to the primary *City of Burbank*-based issue we address above.  Second, the controlling question — whether an emissions-based restriction on aircraft operations is a "standard respecting emissions," 42 U.S.C. § 7573 — is a novel one for which there does not appear to be any on-point authority in Colorado or elsewhere.  Under these circumstances, resolution of the issue would benefit from further development of the parties' arguments and analysis by the district court.  *See Doe v. Wellbridge Club Mgmt. LLC*, 2022 COA 137, ¶ 30.  "After all, we are a court of review, not of first view."  *Id.* at ¶ 31.

¶ 38    We therefore remand the case to the district court for consideration of Jefferson County's argument that plaintiffs' emissions-based claim is preempted by the Clean Air Act.

## IV.    Disposition

¶ 39    The dismissal of plaintiffs' request for injunctive relief to abate aircraft noise is affirmed.  The dismissal of plaintiffs' request for

19

injunctive relief to abate aircraft emissions is reversed, and the case is remanded to the district court for further consideration of whether that portion of plaintiffs' claim is preempted by federal law.

JUDGE GROVE and JUDGE YUN concur.