The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 5, 2025

## 2025COA55

**No. 23CA2110, *Bertoia v. Galaxy* — Bankruptcy — Abuse of Process; Constitutional Law — Sixth Amendment — Federal Supremacy — Preemption**

As a matter of first impression in Colorado, a division of the court of appeals addresses whether a state abuse of process claim arising out of actions taken during bankruptcy proceedings is preempted by federal bankruptcy laws. Applying principles of field and conflict preemption, the division concludes that federal law preempted the plaintiffs' state abuse of process claim. The division also addresses, as a matter of first impression, the impact that an entity's loss of legal representation during the course of an appeal has on a division's ability to decide the merits of the entity's appellate contentions.

COLORADO COURT OF APPEALS **2025COA55**

Court of Appeals No. 23CA2110
City and County of Denver District Court No. 19CV33523
Honorable David H. Goldberg, Judge

Wanda Bertoia,

Plaintiff-Appellant and Cross-Appellee,

and

WPB Hospitality, LLC, a Colorado limited liability company,

Plaintiff-Appellant,

v.

Galaxy Management Company, LLC, a Texas limited liability company;
Jagmohan Dhillon; and Denver Gateway, LLC, a Colorado limited liability
company,

Defendants-Appellees,

and

Frisco Acquisition, LLC, a Texas limited liability company,

Defendant-Appellee and Cross-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE SCHUTZ
Welling and Kuhn, JJ., concur

Announced June 5, 2025

Podoll & Podoll, P.C., Richard B. Podoll, Robert C. Podoll, Robert A. Kitsmiller, Jacqueline E. M. Hill, Greenwood Village, Colorado, for Plaintiff-Appellant and Cross-Appellee and Plaintiff-Appellant

Galaxy Management Company, LLC, a Texas limited liability company, Pro Se

Jagmohan Dhillon, Pro Se

Denver Gateway, LLC, a Colorado limited liability company, Pro Se

Frisco Acquisition, LLC, a Texas limited liability company, Pro Se

¶ 1    Plaintiffs, Wanda Bertoia and her company, WPB Hospitality, LLC (WPB), appeal several orders and the judgment entered by the trial court on their claims against defendants, Galaxy Management Company, LLC (Galaxy); Jagmohan Dhillon; Denver Gateway, LLC (Gateway); and Frisco Acquisition, LLC (Frisco). Frisco cross-appeals the trial court's award to Bertoia of bankruptcy funds that were previously interpleaded into the court registry. We affirm the orders and judgment, and we remand the case to the trial court to determine Frisco's appellate fees and costs.

## I.    Background

¶ 2    Bertoia was the sole owner and manager of WPB when it received construction financing from American Lending Center (ALC) to build a hotel near Denver International Airport. The project failed; ALC initiated a foreclosure action; and, in October 2018, WPB filed for protection under Chapter 11 of the Bankruptcy Code (WPB bankruptcy), which stayed the foreclosure and allowed Bertoia to seek alternative financing.

¶ 3    During the WPB bankruptcy proceedings, Bertoia contracted to sell her ownership interest in WPB to Frisco (WPB Contract) and

1

contracted with Frisco and Abbas Consulting, Inc. (Abbas), for their purchase of the hotel property (Hotel Contract).

¶ 4    The execution of both the Hotel Contract and the WPB Contract was contingent on the bankruptcy court's approval of the subject sales.  However, the bankruptcy court did not approve either contract and ultimately granted ALC relief from the bankruptcy stay to pursue foreclosure of the hotel property.  The bankruptcy court, however, delayed the effective date of the relief from stay until mid-May 2019.

¶ 5    Before the stay was lifted, while ostensibly moving forward to close on the Hotel Contract and the WPB Contract, Bertoia was also separately pursuing refinancing options with third parties that would allow her to pay off the ALC loan and remain in control of WPB and the hotel property.  Frisco eventually learned of these activities.

¶ 6    On May 7, 2019 — citing the absence of approval of the contracts from the bankruptcy court and the impending foreclosure by ALC — Frisco notified Bertoia that it was terminating the WPB Contract.  In its termination letter, Frisco asserted that Bertoia's

"actions and omissions in the course of this matter ha[d] contributed to the impending total devaluation of WPB."

¶ 7    The foreclosure sale of the hotel property was held approximately two weeks after Frisco sent the termination letter. ALC was the successful bidder at the foreclosure sale. ALC sued Frisco after Frisco filed notices of its intent to redeem the property based on mechanics' liens it had obtained while the WPB bankruptcy was pending. ALC and Frisco reached a settlement in July 2019, and contemporaneously, Frisco acquired ALC's interest in the hotel property.

¶ 8    Although Frisco was owned by Param Jit Kaur, it was allegedly controlled by Dhillon. Dhillon was also the sole member and manager of Galaxy, a company that assisted Frisco financially with the purchase of the hotel property. Frisco later assigned its rights in the hotel property to Gateway, a recently formed company wholly owned by Dhillon's wife. Frisco, now an assetless company, filed for protection under Chapter 7 of the Bankruptcy Code in Texas (Frisco bankruptcy) in November 2020.

¶ 9    Meanwhile, in September 2019, a few weeks before Frisco's assignment of the hotel property to Gateway, Bertoia filed this case

3

against ALC, Frisco, Abbas, and the attorneys who had represented Bertoia during the WPB bankruptcy. WPB was eventually added as a Plaintiff in the case. During the Frisco bankruptcy proceedings, Bertoia learned of the transfer of the hotel property from Frisco to Gateway. Bertoia and WPB then amended their complaint to include a claim against Frisco and Dhillon under the Colorado Uniform Fraudulent Transfer Act (CUFTA). §§ 38-8-101 to -112, C.R.S. 2024. Bertoia filed a separate action against Gateway and Dhillon's wife, which also included a CUFTA claim. The trial court consolidated the two lawsuits.

¶ 10    Bertoia and WPB collectively, and Bertoia individually, asserted numerous claims against the parties allegedly involved in these transactions. As relevant on appeal, they asserted the following claims[1] against the identified defendants:

---

[1] Bertoia and WPB filed a total of twelve claims. We include only the eight claims relevant to this appeal.

| # | Claim | Against | Resolution |
|---|---|---|---|
| 1 | Breach of Contract | Frisco, Dhillon, and Galaxy | Jury verdict in favor of Frisco |
| 2 | Fraud | Frisco and Dhillon | Jury verdict in favor of Frisco and Dhillon |
| 3 | Fraudulent Omission | Frisco and Dhillon | Jury verdict in favor of Frisco and Dhillon |
| 4 | Fraudulent Transfer (CUFTA) | Frisco, Gateway, Galaxy, and Dhillon | Dismissed after jury verdict |
| 6 | Abuse of Process | Frisco and Dhillon | Dismissed by court before trial for lack of subject matter jurisdiction |
| 7 | Indemnity | Frisco and Dhillon | Rendered moot by jury verdict |
| 8 | Declaratory Judgment re: Bankruptcy Funds | All defendants | Declaratory judgment entered after trial in favor of Bertoia |
| 9 | Punitive Damages and Treble Punitive Damages | Frisco, Dhillon, Galaxy, and Gateway | Rendered moot by jury verdict |

¶ 11　　Shortly before trial, the court entered an order resolving the parties' cross-motions for summary judgment on various claims. The court determined, as a matter of law, that the Hotel Contract was null and void because the bankruptcy court did not approve the contract within thirty days of its execution, as required. Thus, the court entered judgment in favor of Frisco, Dhillon, and Galaxy and against Bertoia on her claims for breach of the Hotel Contract.

¶ 12     In the same order, the trial court concluded that the "indemnity provision contained in the WPB Contract is valid and enforceable, and Bertoia is entitled to seek damages as more fully . . . contemplated in the agreement." In subsequent proceedings, Bertoia asserted that the court had entered judgment in her favor on the issue of Frisco's liability under the indemnity provision. Four days after issuing the order, the trial court entered the following clarifying order:

> [Bertoia's counsel] advised the Court that they construe one of the Court's Orders as granting partial summary judgment on the issue of liability on [Bertoia's] indemnity claim. Such is not the case. The Court determined that the indemnity provision, like the [WPB] Contract, is a valid and enforceable provision. The Court did not and could [not] rule as a matter of law that Frisco is liable to . . . Bertoia.

> Bertoia argues that "Frisco has not and cannot contend that the [WPB] Contract was performed. The inquiry need not go beyond that." Frisco does not contend it performed under the [WPB Contract]. Rather, Frisco contends, among other things, that Frisco was not able to perform under the agreement or was prevented from performing and such inability to perform is a defense to . . . Bertoia's contract claim. A finding of liability is a factual determination. The finder of fact, the jury, will determine whether or not Frisco

6

breached the [WPB] Contract entitling . . . Bertoia to recover damages.

¶ 13    The case proceeded to trial.  As noted, the jury returned verdicts in favor of Frisco on Bertoia's claim for breach of the WPB Contract and in favor of Frisco and Dhillon on her fraud claims. Upon receiving the verdicts, plaintiffs' counsel acknowledged that they could not proceed on the CUFTA claim in light of the verdicts, so the court dismissed that claim as moot.

¶ 14    In its written judgment entered on the verdicts, the court determined that Frisco was the prevailing party under the WPB Contract.  After substantial briefing, the court awarded Frisco $509,516.61 in attorney fees against Bertoia.  The court also awarded $27,795.42 in costs to Dhillon and Frisco against Bertoia and WPB.

## II.    Indemnity Clause

¶ 15    The WPB Contract contained an indemnity provision that read, in relevant part, as follows:

> [Frisco] shall indemnify, defend, and hold [Bertoia] harmless . . . against all claims, losses, expenses, and damages, including interest, penalties, and reasonable attorneys' fees through all appeals, that [Bertoia] shall

7

> incur, which are caused by [Frisco's] . . .
> breach of or *failure by [Frisco] to perform.*

(Emphasis added.)

¶ 16    Bertoia argues on appeal that the trial court erred by failing to find that Frisco breached the indemnity provision as a matter of law. More specifically, Bertoia asserts that because Frisco failed to close on the WPB contract, Frisco failed to perform the contract, thus triggering its obligation to indemnify Bertoia for the resulting losses.

¶ 17    Frisco contends that the trial court correctly concluded that the indemnity provision was not triggered because it only applied to claims made against Bertoia by third parties. Additionally, Frisco argues that it did not fail to perform because its decision to terminate the WBP Contract was justified based on Bertoia's failure to obtain bankruptcy court approval of the Hotel and WPB Contracts and because Bertoia breached the agreement by pursuing third-party refinancing and ultimately failing to take the necessary action to avoid ALC's foreclosure on the hotel property. As a result, Frisco argues, WPB no longer owned its sole asset — the hotel — frustrating the central purpose of the WPB Contract.

¶ 18    After setting forth the applicable standard of review and

applicable law, we address the merits of the parties' contentions.

### A.    Standard of Review

¶ 19    Contract interpretation is a question of law that we review de

novo. *French v. Centura Health Corp.*, 2022 CO 20, ¶ 24. We review

factual findings for clear error. *M.D.C./Wood, Inc. v. Mortimer*, 866

P.2d 1380, 1383-84 (Colo. 1994). In interpreting a contract, our

primary obligation is to give effect to the parties' intent. *Quarky,*

*LLC v. Gabrick*, 2024 COA 76, ¶ 11. We do so by giving the words of

the contract their plain and ordinary meaning, avoiding

interpretations that fail to give effect to the terms used by the

parties, and avoiding interpretations that would lead to an absurd

result. *Id.*

¶ 20    To establish a breach of contract claim, a party must prove

"(1) the existence of a contract; (2) performance by the plaintiff or

some justification for nonperformance; (3) failure to perform the

contract by the defendant; and (4) resulting damages to the

plaintiff." *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App.

2008). Thus, to prevail on a contract claim, the plaintiff must prove

that they performed their end of the bargain. *Id.* If a plaintiff has

breached a material term of the contract, the other party is under no obligation to perform. *See Converse v. Zinke*, 635 P.2d 882, 887 (Colo. 1981) ("If one party has failed to perform the bargained for exchange, the other party may be relieved of a duty to continue its own performance, where the failure is material and unexcused."). Similarly, if a party frustrates an essential purpose of the contract, the other party is relieved of their obligation to perform. *See Highlands Broadway OPCO, LLC v. Barre Boss LLC*, 2023 COA 5, ¶ 13 ("[A] party may be excused from performance under a contract when the 'party's principal purpose is substantially frustrated without his fault by a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made.'") (citation omitted). Whether a party has breached a material term of a contract presents an issue of fact for the jury. *Morris v. Belfor USA Grp., Inc.*, 201 P.3d 1253, 1258 (Colo. App. 2008).

## B.    Analysis

¶ 21     As a threshold matter, we disagree with Bertoia's argument that the trial court initially granted her partial summary judgment on Frisco's liability under the indemnity provision. As noted, four

10

days after entering its summary judgment order and three days before trial, the trial court clarified that it had only ruled that the indemnity provision was valid and enforceable, not that Frisco was liable under it. The court also made clear that there were disputed issues of fact regarding whether Frisco breached the contract, or frustrated its purpose, and that the jury would resolve those factual issues. This order should have resolved any confusion Bertoia had about the scope of the initial summary judgment order.

¶ 22    But Bertoia reasserted this same argument in her post-trial motion to amend the judgment. In denying that motion, the trial court unequivocally rejected Bertoia's interpretation of its summary judgment order, characterizing it as a "tortured or self-serving interpretation." As the court again noted, its order merely recognized that the WPB Contract, including the indemnity provision, was valid and enforceable and that the jury had to resolve whether either party had breached the agreement.

¶ 23    Turning to the substance of Bertoia's argument, she relies on the second part of the indemnity provision's disjunctive trigger. In other words, she does not argue that Frisco breached the WPB Contract; rather, she argues that Frisco *failed to perform* the WPB

11

Contract by failing to execute it. Bertoia argues that a "failure to perform" cannot constitute a breach because that would render the "failure to perform" language superfluous. Thus, Bertoia asserts, Frisco is liable for not closing on the WPB Contract, regardless of whether its decision to terminate was justified by the contract's terms. We disagree.

¶ 24 First, the argument does not to give meaning to the word "failure." A "failure to perform" means "[a] party's not meeting its obligations under a contract." Black's Law Dictionary 737 (12th ed. 2024). If Frisco had no contractual obligation to perform, it could not, by definition, have "failed" to perform the WPB Contract.

¶ 25 Whether Bertoia had breached the WPB Contract or frustrated its performance was a factual issue that the parties vigorously disputed. These factual disputes were properly submitted to the jury. By returning a verdict in favor of Frisco on Bertoia's claim for breach of contract, the jury necessarily determined either that Bertoia had breached the contract — thereby excusing Frisco's performance — or that Frisco did not breach. In either event, Frisco did not fail to fulfill any obligation it had under the WPB Contract. Thus, its indemnity provision was not triggered.

¶ 26     A sensible reading of the WPB Contract's terms dictates the same conclusion.  The logical extension of Bertoia's argument is that Frisco would have been obligated to close on the WPB Contract, even if Bertoia refused to convey her interest in WPB or her actions resulted in the loss of WPB's sole asset.  In other words, Bertoia is arguing that Frisco was required to close the WPB Contract regardless of whether WPB fulfilled or could fulfill its obligations thereunder.  Bertoia cites no authority to support this novel interpretation of the indemnity provision, and we are aware of none.  We decline to adopt a construction that would result in such absurdity.  *See Quarky,* ¶ 11.

¶ 27     Moreover, indemnity clauses are generally triggered when a third party suffers damages as a consequence of a contracting party's failure to perform, and the third party then sues the nonbreaching contracting party resulting in a loss to the nonbreaching party.  *Regency Realty Invs., LLC v. Cleary Fire Prot., Inc.,* 260 P.3d 1, 7 (Colo. App. 2009).  In this case, no third party sued Bertoia or WPB as a result of Frisco's termination of the WPB Contract.

¶ 28    Thus, we perceive no error in the trial court's conclusion that Frisco was not liable to Bertoia as a matter of law under the indemnity provision and that the factual disputes related thereto were for the jury to resolve.

### III.    Bertoia's Trial Claims

¶ 29    Bertoia argues the trial court abused its discretion when it precluded evidence from other litigation, specifically evidence of the Frisco bankruptcy and affidavits from that proceeding.[2]

### A.    Excluded Evidence

¶ 30    "A trial court has broad discretion over the admissibility of evidence." *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010).  Therefore, we review its evidentiary rulings for an abuse of discretion.  *Id.*

¶ 31    Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without

---

[2] Bertoia also argues her fraud claim against Dhillon should be reinstated.  She provides no authority to support this argument; therefore, we do not address it further.  *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 44, *aff'd*, 2021 CO 56.

the evidence."  CRE 401; *see People v. Wallace*, 97 P.3d 262, 267 (Colo. App. 2004).

## B.    Evidence of Other Litigation

¶ 32    Prior to trial, defendants moved to exclude evidence of the lawsuit between ALC and Frisco and Frisco's assignment of its interest in the hotel to Gateway.  The trial court granted the motion, finding that the subjects were not material to the trial.  Bertoia contends this ruling was an abuse of the trial court's discretion.

¶ 33    The trial court acknowledged that our evidentiary rules favor the admission of relevant evidence.  *See People v. Brown*, 2014 COA 155M-2, ¶ 22 ("The Colorado Rules of Evidence strongly favor the admission of relevant evidence.").  However, the court ultimately ruled, "These matters are not material or relevant to the claims at issue under CRE 401 and 402, [and] are outweighed by the prejudicial value under CRE 403."  *See* CRE 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of

cumulative evidence.").  We perceive no abuse of discretion in this ruling.

## C.    Kaur's Affidavits

¶ 34    Bertoia argues that the trial court abused its discretion by excluding affidavits Kaur submitted in the Frisco bankruptcy case. Bertoia argues that Kaur's affidavits contradicted his deposition testimony.

¶ 35    Bertoia submitted the affidavits to the trial court, and the trial court excluded them because it determined the affidavits were hearsay and therefore inadmissible.  Bertoia argues on appeal, as she did in the trial court, that the affidavits are not hearsay under CRE 801(d)(2)(A),[3] as an admission by a party-opponent.

¶ 36    Admissions by a party-opponent are excluded from the definition of hearsay because they typically do not have the same reliability issues that other out-of-court statements have. *Burlington N. R.R. Co. v. Hood*, 802 P.2d 458, 466-67 (Colo. 1990). However, Kaur was not a named party in this case.  Thus, his

---

[3] Bertoia and WPB do not argue that any of the other exceptions under CRE 801(d)(2) apply, and we therefore do not address them.

16

affidavits do not qualify as admissions by a party-opponent, and the trial court did not abuse its discretion by excluding them.

### D. Submission of Breach of Contract Claim to Jury

¶ 37    Bertoia and WPB also argue on appeal that the court should not have submitted the breach of contract claim to the jury. For the reasons stated above, *supra* Part II.B, we reject this argument to the extent that it is based on the contention that there was no dispute whether Bertoia or Frisco breached the contract.

¶ 38    Bertoia and WPB also appear to contend that the court should have instructed the jury that the bankruptcy court's approval of the WPB Contract was not required. But the trial court did instruct the jury that it had determined, as a matter of law, that "the contract between [Frisco] and [Bertoia], two non-debtors, did not require bankruptcy [court] approval." Thus, we perceive no error.

### E. Defense Counsel's Closing Argument

¶ 39    Bertoia and WPB also argue that defense counsel misrepresented Bertoia's testimony at trial to such an extent that

17

they should be granted a new trial. This issue is unpreserved because Bertoia did not object to the argument at trial.[4]

¶ 40 It is well-established Colorado law that new arguments may not be raised for the first time on appeal. *Gold Hill Dev. Co., L.P. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 18. Because Bertoia and WPB failed to object to defense counsel's closing argument, the issue is not preserved, and we decline to address it further.

## IV. Federal Preemption of Abuse of Process Claim

¶ 41 Bertoia and WPB asserted an abuse of process claim against Frisco and Dhillon. The trial court dismissed the claim before trial on the grounds that it was preempted by federal bankruptcy law. Bertoia and WPB appeal that ruling.

### A. Standard of Review and Applicable Law

¶ 42 The following constitutional mandate is the foundation of our preemption jurisprudence:

> The Supremacy Clause of the U.S. Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing

---

[4] Bertoia does not address the matter of preservation in her opening brief and does not address this issue at all in her reply brief.

18

in the Constitution or Laws of any State to the Contrary notwithstanding."

*Middleton v. Hartman*, 45 P.3d 721, 731 (Colo. 2002) (quoting U.S. Const. art. VI, cl. 2). Whether a state law claim is preempted by the supremacy clause presents a question of law subject to de novo review. *Forfar v. Wal-Mart Stores, Inc.*, 2018 COA 125, ¶ 47.

¶ 43 "There are three types of federal preemption: express, field, and conflict." *Colo. Div. of Ins. v. Statewide Bonding, Inc.*, 2022 COA 67, ¶ 33. "[E]xpress preemption occurs when Congress enacts legislation that, on its face, expressly preempts state law." *Id.* "Field preemption occurs when Congress enacts legislation that is so pervasive that it leaves no room for state action or is so dominant that it precludes the enforcement of state laws on the same subject." *Id.* at ¶ 34. "There are two types of conflict preemption: when simultaneous compliance with both state and federal law is impossible, and 'where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."'" *Id.* (citation omitted).

¶ 44 When assessing any preemption question, we adhere to two fundamental principles. First, Congress's purpose in enacting the

federal legislation is controlling. *Fuentes-Espinoza v. People*, 2017 CO 98, ¶ 22. Second, we must presume that Congress did not intend to preempt the historic police powers of the state unless that was the clear and manifest purpose of the federal legislation. *Colo. Div. of Ins.*, ¶ 31.

## B. Parties' Contentions

¶ 45 Frisco and Dhillon acknowledge that they filed the Frisco bankruptcy case to delay the state law litigation and that the bankruptcy case was ultimately voluntarily dismissed. These undisputed facts were central to Bertoia and WPB's abuse of process claim. The claim also alleged that Frisco and Dhillon engaged in improper conduct during the bankruptcy proceedings, including filing false affidavits and improperly bidding up the price that Bertoia was required to pay to purchase the trustee's potential fraudulent transfer claims.

¶ 46 Bertoia and WPB contend that the trial court erred by dismissing their abuse of process claim because federal law does not reflect a "congressional intent to preempt all state law abuse of process remedies."

¶ 47    Frisco and Dhillon counter that the trial court properly concluded it lacked subject matter jurisdiction to consider the abuse of process claim because such claims are governed by bankruptcy law, which is the exclusive province of Congress and the federal courts.  *See* U.S. Const. art I, § 8, cl. 4; *see also In re L.D. Brinkman Holdings, Inc.*, 310 B.R. 686, 688 (Bankr. N.D. Tex. 2004) ("Congress has enacted the Bankruptcy Code pursuant to the power delegated to Congress by Art. I, § 8, cl. 4 of the U.S. Constitution.  When Congress exercises its power under the bankruptcy clause, the subject of bankruptcy law is exclusively a matter of federal law.").

## C.    Analysis

¶ 48    Bertoia and WPB advance three specific arguments in support of their contention that the abuse of process claim was not preempted.  First, they argue that Frisco and Dhillon waived a preemption defense by not asserting it in their answer.  Second, they argue that preemption does not apply to an abuse of process that occurs during a voluntary bankruptcy case.  Lastly, they argue that preemption is inapplicable because Dhillon was not a debtor in

the Frisco bankruptcy proceedings. We address and reject each of these arguments in turn.

¶ 49    If federal law preempts a state law claim, a state court is deprived of subject matter jurisdiction to hear the claim. *See People v. Fuentes-Espinoza*, 2013 COA 1, ¶ 63 (Casebolt, J., dissenting), *rev'd*, 2017 CO 98; *see also Thomas v. Fed. Deposit Ins. Corp.*, 255 P.3d 1073, 1078 (Colo. 2011) (Federal law preempts state jurisdiction where Congress so provides "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." (quoting *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981))). Because it impacts a court's jurisdiction to hear a claim, preemption may be raised at any time. *In re Marriage of McClure*, 2024 COA 70, ¶ 7 ("[W]hether the anti-assignment provision preempts a state court from taking a certain action in a dissolution proceeding implicates the state court's subject matter jurisdiction, and a challenge to subject matter jurisdiction may be raised at any stage of the proceedings."). Thus, Dhillon and Frisco could not and did not waive their preemption argument.

22

¶ 50     Turning to the substance of Bertoia and WPB's preemption contentions, we reject their efforts to avoid the reach of cases holding that preemption precludes state law abuse of process claims predicated on conduct that occurred in bankruptcy proceedings. The vast majority of courts to address the issue have so ruled. *See Metcalf v. Fitzgerald*, 214 A.3d 361, 370-71 (Conn. 2019) (collecting cases). *But see Graber v. Fuqua*, 279 S.W.3d 608, 611 (Tex. 2009) ("[A] malicious prosecution claim predicated on conduct in an adversary proceeding does not fall within the federal courts' exclusive . . . jurisdiction."). These cases generally rely on four rationales when concluding that state abuse of process claims are preempted. *See Longnecker v. Deutsche Bank Nat'l Tr. Co.*, 842 N.W.2d 680, 2013 WL 6700312, at *4 (Iowa Ct. App. 2013) (unpublished table decision).

¶ 51     First, "'Congress has expressed its intent that bankruptcy matters be handled in a federal forum by placing bankruptcy jurisdiction exclusively' in the federal district courts." *Id.* (quoting *MSR Expl., Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 913-14 (9th Cir. 1996)); *see* 28 U.S.C. § 1334(a) (Except as otherwise provided, "the [federal] district courts shall have original and exclusive jurisdiction

of all [bankruptcy] cases . . . ."). Congress's delegation of exclusive jurisdiction over bankruptcy cases to the federal courts is strongly indicative of its intention to preempt the field. *See Fuentes-Espinoza*, 2017 CO 98, ¶ 26 ("Congress's intent to preempt a particular field may be inferred 'from a framework of regulation "so pervasive . . . that Congress left no room for the States to supplement it" or where there is a "federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."'" (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012))); *MSR*, 74 F.3d at 913 ("[T]he exclusivity of federal jurisdiction over bankruptcy matters is an indication of Congress's intent" to preempt malicious prosecution claims.).

¶ 52 Second, Congress's passage of the "complex, detailed, and comprehensive provisions" of the Bankruptcy Code reflect its intent "to create a whole system under federal control." *MSR*, 74 F.3d at 914 (citing 11 U.S.C. §§ 101-1532). These extensive and interrelated provisions render it unlikely that Congress contemplated the "superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process." *Id.*

¶ 53    Third, recognition of federal preemption in the bankruptcy context promotes the benefits of uniform and predictable enforcement of bankruptcy laws and procedures. *Id.* This result is consistent with the constitutional delegation to Congress of the power "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art I, § 8, cl. 4.

¶ 54    Fourth, throughout the Bankruptcy Code, Congress has authorized several specific remedies designed to prevent the misuse of the bankruptcy process. *Longnecker*, 2013 WL 6700312, at *5; *see MSR*, 74 F.3d at 915-16. The existence of these remedies reflects Congress's intent to preempt state law abuse of process claims in the bankruptcy arena.

¶ 55    Bertoia and WPB attempt to avoid the reach of these cases by arguing that they generally arise in circumstances involving involuntary bankruptcy petitions, where Congress has created an express and specific remedy for abuse of process claims. *See* 11 U.S.C. § 303(i)(2) (authorizing an abuse of process claim against a person who files an involuntary petition in bad faith); *see also PNH, Inc. v. Alfa Laval Flow, Inc.*, 2011-Ohio-4398, ¶ 3 (finding

preemption of a state law claim for abuse of process arising out of an involuntary bankruptcy case).

¶ 56    But the general bankruptcy provisions also authorize bankruptcy courts to enter any "judgment that is necessary or appropriate to carry out the provisions of this title," including, "sua sponte, taking any action . . . to prevent an abuse of process."  11 U.S.C. § 105(a).  Nothing in this provision limits its applicability to *involuntary* bankruptcy proceedings; therefore, bankruptcy courts' authority to take any action to prevent an abuse of process is equally applicable in *voluntary* bankruptcy proceedings.  Moreover, numerous bankruptcy courts have relied on 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9011 to conclude that federal law preempts state law abuse of process claims arising out of both voluntary and involuntary bankruptcy proceedings.  *See Metcalf*, 214 A.3d at 365, 370-74 (collecting and discussing preemption cases).

¶ 57    Similarly, we reject plaintiffs' attempt to limit the scope of these cases to preempt only abuse of process claims involving bankruptcy *debtors*, excluding from preemption all abuse of process claims involving non-debtors.  Nothing in § 105(a) limits a bankruptcy court's authority to take any action to prevent an abuse

of process committed by a non-debtor. For example, in *Astor Holdings, Inc. v. Roski*, 325 F. Supp. 2d 251, 260 (S.D.N.Y. 2003), the court addressed state law claims alleging that the defendant misused the bankruptcy process by wrongfully inducing a third party to seek bankruptcy protection, causing harm to the plaintiff. In determining the claims were preempted, the court reasoned as follows:

> [T]he Bankruptcy Code contains . . . remedies for "the misuse of the bankruptcy process" . . . generally, and thus such misuse is governed exclusively by that Code. . . . [T]he fact that the particular defendant in [a] state-law suit was not the debtor "is a distinction without a difference," since preemption entails that a claim that could have been made, and for which a remedy is provided, under the Bankruptcy Code cannot be the subject of regulation by state statutory or common-law remedies.

*Id.* at 262 (alteration omitted) (quoting *Choy v. Redland Ins. Co.*, 127 Cal. Rptr. 2d 94, 103 (Ct. App. 2002)). We find this rationale persuasive and, for similar reasons, reject Bertoia and WPB's argument that the preemption bar only applies to abuse of process claims asserted against bankruptcy debtors.

27

¶ 58    For these reasons, we conclude that federal law preempted Bertoia and WPB's abuse of process claim, and the trial court did not err by dismissing it.

## V.    Show Cause Order

¶ 59    In December 2024, this court entered an order permitting defendants' counsel to withdraw. The order also stated that Galaxy and Frisco were "domestic entities authorized to do business in Colorado" and, "[e]xcept as provided in [section] 13-1-127(2) and (2.5)[,] C.R.S. 2024, a domestic entity must appear in a court under the representation of a licensed attorney." *Bertoia v. Denver Gateway*, (Colo. App. No. 23CA2110, Dec. 2, 2024) (unpublished order). The order continued that, if Galaxy and Frisco intended to remain part of the appeal, an attorney needed to enter an appearance on their behalf within twenty-one days of the order, or they needed to otherwise explain why they were not required to retain counsel. *Id.* The order concluded, "Failure to timely respond . . . shall result in dismissal of [the Frisco and Galaxy entities] as parties to the appeal, and in dismissal of [Frisco's] cross-appeal, without further opportunity to be heard." No response or entry of appearance on their behalf was filed.

28

¶ 60    Subsections (2)(a) and (2.5)(b) of section 13-1-127 authorize an officer of a closely held corporate entity to represent the entity in litigation and administrative proceedings in which the amount in controversy does not exceed $15,000 and in workers' compensation actions irrespective of the amount in controversy.  To proceed without counsel in such circumstances, the closely held entity must provide the court, "at or prior to the trial or hearing, with evidence satisfactory to the court . . . of the authority of the officer to appear on behalf of the closely held entity in all matters within the jurisdictional limits set forth in" section 13-1-127.  *See also* § 13-1-127(2.5)(b) ("[A]ny corporation which is in compliance with the requirements otherwise imposed on corporations by law may be represented by any employee of the corporation who is so authorized by the president or secretary of such corporation, in proceedings authorized under the 'Workers' Compensation Act of Colorado,'" subject to certain restrictions.).

¶ 61    The amount in controversy in this case exceeded $15,000, and neither Galaxy nor Frisco provided the necessary authorizations required by the statute; therefore, these entities could only be represented in this case by a licensed attorney.

¶ 62    Prior to their withdrawal, however, Frisco and Galaxy's counsel filed their answer brief and Frisco's opening brief in support of its cross-appeal. True, Frisco did not file a reply brief in the cross-appeal; however, under C.A.R. 28(c), reply briefs "*may*" be filed but are not necessary to proceed with an appeal. (Emphasis added.)

¶ 63    Because the principal briefs were properly submitted before counsel withdrew, we may proceed to address the merits of Frisco's and Galaxy's contentions, notwithstanding counsel's withdrawal. Thus, we conclude there is no basis to dismiss either Frisco or Galaxy from the appeal or to strike Frisco's cross-appeal under these circumstances. We therefore discharge the show cause order.[5]

---

[5] We remind litigants, however, that a corporation, unlike a natural person, "generally cannot appear or act in a judicial proceeding in person, but must be represented by a licensed attorney." *Keller Corp. v. Kelley*, 187 P.3d 1133, 1136 (Colo. App. 2008). Section 13-1-127(2), C.R.S. 2024, provides an exception to this rule for certain closely held entities. In circumstances such as these — when counsel for the corporate entity has withdrawn after filing the principal briefs — the corporate entity can only make additional filings or appearances in the case through counsel, unless it satisfies the provisions of section 13-1-127(2).

## VI.    Bankruptcy Funds

¶ 64    After the trial court denied Frisco's motion to dismiss Bertoia's breach of contract claim, Frisco filed the Frisco bankruptcy proceeding under Chapter 7 of the Bankruptcy Code.  In that case, Frisco indicated that it had no assets.  During the Frisco bankruptcy, Bertoia purchased the bankruptcy trustee's potential claim against Frisco, Gateway, and Dhillon for fraudulent transfers arising out of Frisco's assignment of its rights in the hotel to Gateway.

¶ 65    Kaur also sought to purchase the trustee's rights, presumably to effectively avoid a fraudulent conveyance claim from being asserted against those involved in the transfer of Frisco's interest in the hotel property.  The competitive bidding process resulted in Bertoia paying $755,000 to purchase the trustee's right to pursue the fraudulent transfer claims.

¶ 66    Bertoia asserted a fraudulent transfer claim in an adversary proceeding before the bankruptcy court.  On the eve of the scheduled trial for that claim, the parties stipulated to its dismissal and the subsequent dismissal of the bankruptcy action.  Once the

bankruptcy case was dismissed, Bertoia was permitted to proceed on her CUFTA claim before the trial court.

¶ 67 When the stipulation was filed, a portion of the proceeds from Bertoia's purchase of the trustee's claims — $540,809.95 — remained in the bankruptcy court's registry. In advance of the dismissal of the bankruptcy proceedings, the parties stipulated to transfer the proceeds to the trial court's registry. The order provided as follows:

> [P]rior to the dismissal of this case, [trustee's counsel] shall file a *Motion to Deposit Bankruptcy Estate Funds with the Court* of all funds remaining in the Bankruptcy Estate into the Registry of the [trial court] . . . . It is further
>
> . . . .
>
> ORDERED, ADJUDGED and DECREED that 11 U.S.C. § 349(b)(3) does not apply with regard to the causes of action sold to Bertoia under the Sale Order, nor does it apply in any way to the sale proceeds received in connection with the Sale Order. It is further
>
> . . . .
>
> ORDERED, ADJUDGED and DECREED that nothing in the dismissal of this Bankruptcy Case shall preclude or otherwise affect the rights of any of the parties in the [trial court action] or their entitlement to the proceeds received in connection with the Sale Order,

32

and all parties are barred from using any part of this Order for an advantage in the [trial court action].

¶ 68     In explaining the purpose of the motion to dismiss and request to interplead the remaining bankruptcy proceeds, counsel for the bankruptcy trustee explained,

> [T]his dismissal will allow our local counsel with the funds remaining to file a motion to interplead . . . the remaining funds into the registry of the [trial court] for these parties — these non-debtor parties to fight about later.
>
> The dismissal order would further provide that nothing in the dismissal of the bankruptcy will preclusively or otherwise affect the rights of the parties in the [trial court] litigation. So the [bankruptcy trustee's] final act will be to file a motion to interplead the funds in [the trial court]. And we will be done with the case.

¶ 69     The motion to interplead was granted, and the remaining funds were deposited in the trial court registry.

¶ 70     After the trial, Bertoia filed a motion for a declaratory judgment that only she was entitled to receive the interpleaded funds. Frisco opposed the motion, arguing that the funds should be distributed to it based on bankruptcy law principles. Applying equitable principles, the trial court entered a declaratory judgment

ordering that all funds in the registry be distributed to Bertoia. Frisco appeals that judgment.

### A. Standard of Review and Applicable Law

¶ 71 We review a trial court's entry of a declaratory judgment for an abuse of discretion. *Nash v. Mikesell*, 2024 COA 68, ¶ 15. "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or based on a misapplication of the law." *Id.* To the extent that the entry of judgment depends on the application of legal principles, we review such decision de novo. *Id.*

¶ 72 "The purpose of a court sitting in equity is to promote and achieve justice with some degree of flexibility." *Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850, 855 (Colo. 1992). "[T]he exercise of equitable jurisdiction requires an inquiry into the particular circumstances of the case." *Id.* Equitable remedies are within the trial court's discretion, and we review for an abuse of that discretion. *Wilson v. Prentiss*, 140 P.3d 288, 293 (Colo. App. 2006).

### B. Analysis

¶ 73 Frisco argues that the trial court erred by not distributing the bankruptcy funds in accordance with 11 U.S.C. § 726. It asserts

that when Bertoia purchased the trustee's rights, the money she paid for that purchase became part of the bankruptcy estate. Once the bankruptcy case was dismissed, Frisco's argument continues, the funds should have been distributed to it, as the debtor, pursuant to § 726(a)(6) (After the payment of allowed creditors' claims, "property of the estate shall be distributed . . . to the debtor."). Indeed, Frisco argues that the stipulated order "makes clear that the [distribution] analysis should not be impacted by the dismissal of the bankruptcy."

¶ 74     We reject Frisco's argument for multiple reasons. First, it is inconsistent with the terms of the stipulated order, which provides that "nothing in the dismissal of this Bankruptcy Case shall preclude or otherwise affect the rights of any of the parties in [the trial court action]" and that "all parties are barred from using any part of [the stipulated order] for an advantage in [the trial court action]." Thus, we reject Frisco's argument that the stipulated order dictated how the interpleaded funds were to be distributed.

¶ 75     We also reject Frisco's argument that the stipulated order suggests or implies that the funds should be distributed pursuant to § 726(a)(6) or any other Bankruptcy Code provision. Nothing in

35

the stipulated order so provides or even suggests. In addition, § 726(a)(6) applies only when funds remain part of the estate at the time the bankruptcy is dismissed. But because of the stipulated order and the resulting interpleader, no funds remained in the estate at the time of the dismissal of the bankruptcy case. Thus, by its own terms, 11 U.S.C. § 726(a)(6) is not applicable.

¶ 76 For similar reasons, we reject Frisco's argument that the stipulated order simply effectuated a change of venue, with the understanding that the trial court would have the responsibility of distributing the interpleaded funds in accordance with bankruptcy law. That argument fails for two reasons. First, federal courts are the exclusive venue for resolving bankruptcy proceedings and administering bankruptcy law. *See Maryland v. Antonelli Creditors' Liquidating Tr.*, 123 F.3d 777, 787 (4th Cir. 1997) (Congress has exercised its "constitutionally authorized legislative power to make federal courts the exclusive venue for administering the bankruptcy law."). Second, the bankruptcy court could have applied § 726(a)(6) at the time of dismissal, had that been its or the parties' intent. But it did not do so. Instead, the bankruptcy court deferred

resolution of the issue to the trial court, unencumbered by any obligation to interpret or apply bankruptcy law in doing so.

¶ 77    Given these circumstances, we agree with the trial court that the decision of how to distribute the disputed funds was left to its authority.  We also agree with the court that, absent a designated standard, the distribution issue was best governed by equitable principles.  And this is precisely how the trial court proceeded:

> Frisco now seeks an order from this Court directing payment to it of funds received from the sale of an asset which had originally belonged to Plaintiffs. . . .
>
> Frisco is essentially asking this Court to convert Bertoia's fraud claim against it into a more than half million-dollar payout in its favor, in exchange for nothing. . . .  To countenance such a result would be to condone a perverse inversion of the bankruptcy process and, more to the point for the purposes of this motion, an inequitable result.

¶ 78    We agree with the trial court that it would be inherently inequitable to award the disputed funds to Frisco.  Frisco represented that it had no assets when it filed for bankruptcy. Before the Frisco bankruptcy was initiated, Bertoia had the right to bring a fraudulent conveyance claim against Frisco, Gateway, and

Dhillon.  Indeed, Frisco concedes that it initiated the bankruptcy proceedings to avoid or frustrate such a claim.  After the Frisco bankruptcy was filed, Bertoia sought to purchase the trustee's right to assert a potential fraudulent transfer claim.  Because Frisco's sole owner bid up the sale price, Bertoia was ultimately required to pay the inflated sum of $755,000 to reacquire the claim.  The disputed funds thus came solely from Bertoia.  And there were no Frisco creditors that claimed any interest in the proceeds.

¶ 79     Given these dynamics, the trial court did not err by concluding that distribution of the disputed funds to Frisco would have resulted in an inappropriate and unjust windfall, while distributing those funds to Bertoia would produce a fair and equitable result.  Thus, we perceive no abuse of discretion in the trial court's logic or its award of the funds to Bertoia.

## VII.   CUFTA Dismissal

¶ 80     While not entirely clear, it appears Bertoia contends that she did not voluntarily dismiss her CUFTA claim.  The CUFTA claim was bifurcated and held in abeyance pending completion of the jury trial.  Based on the defense verdicts, the trial court asked Bertoia's counsel about the status of the CUFTA claim:

THE COURT: And I'm looking at [section] 38-8-105, [C.R.S. 2024,] the Colorado Uniform Fraudulent Transfer Act; is that also moot?

BERTOIA'S COUNSEL: Yes. We had to have a judgment of damages.

THE COURT: All right. Those two, then, are dismissed. And do you want to — I'll do it on motion. Or is this sufficient to make a record. Sir?

BERTOIA'S COUNSEL: No, Your Honor, I think it's sufficient on those two claims right now. I'd like to process this as far as post-trial motions go.

¶ 81    In later briefing related to a lis pendens, Bertoia's counsel argued that he did not voluntarily dismiss the CUFTA claim, but he also admitted that the CUFTA claim could only be pursued by Bertoia if she was a creditor of Frisco. And Bertoia's counsel argued that if a post-trial motion was granted or if the verdict in Frisco's favor were reversed on appeal, then Bertoia could still potentially qualify as a creditor and could then pursue her CUFTA claim. But the trial court did not grant Bertoia post-trial relief, and we affirm the judgment entered against Bertoia on her other claims. Thus, by her counsel's admission, Bertoia is not a creditor, and therefore, she cannot pursue her CUFTA claim.

39

¶ 82    We therefore discern no justiciable controversy on this issue, and we decline to address it further. *See Cacioppo v. Eagle Cnty. Sch. Dist. RE-50J*, 92 P.3d 453, 467 (Colo. 2004) ("Because there is no existing controversy . . . , we conclude that this issue is not justiciable and we decline to address it.").

## VIII.  Fees and Costs

¶ 83    Finally, we turn to the parties' contentions regarding the trial court's awards of attorney fees and costs to the prevailing parties.

### A.    Trial Fees and Costs

#### 1.    Standard of Review and Applicable Law

¶ 84    "A trial court has broad discretion in determining whether to award attorney fees, and absent a showing of an abuse of that discretion, we will not disturb its decision." *Fontanari v. Snowcap Coal Co.*, 2023 COA 29, ¶ 9.  We also review the trial court's decision to admit expert testimony for an abuse of discretion. *See Luster v. Brinkman*, 205 P.3d 410, 413-14 (Colo. App. 2008) (Trial courts are "vested with broad discretion to determine the admissibility of expert testimony.").  As mentioned, a trial court abuses its discretion if the decision is "manifestly arbitrary,

unreasonable, or unfair." *Planning Partners Int'l, LLC v. QED, Inc.*, 2013 CO 43, ¶ 12.

¶ 85 An award of attorney fees must be reasonable. *Crow v. Penrose-St. Francis Healthcare Sys.*, 262 P.3d 991, 998 (Colo. App. 2011). In cases involving a prevailing-party attorney fees provision that applies to only some of the asserted claims, if the issues are "sufficiently intertwined and inter-related," fee apportionment is not required. *Planning Partners*, ¶ 27. When determining the reasonableness of an award of fees, the trial court usually calculates the lodestar amount, which represents the number of hours an attorney reasonably expended on the case multiplied by a reasonable hourly rate. *Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 18. Alternatively, in lieu if a lodestar calculation, the court may conduct its fee analysis by initially accepting the amount billed by counsel for the claiming party. *Id.* at ¶ 22.

## 2. Analysis

¶ 86 Bertoia and WPB make several underdeveloped arguments in their opening brief regarding the trial court's award of attorney fees.

¶ 87 First, they argue that the trial court abused its discretion by awarding fees and costs to Frisco because it applied only the WPB

Contract's fee-shifting provision and failed to consider the contract's indemnity clause. As discussed at length above, the indemnity provision did not apply in this case because Frisco did not breach the contract or otherwise fail to perform. Therefore, we look to the contract's fee-shifting provision to review the trial court's fees and cost awards.

¶ 88 In the event of litigation over its enforcement, the WPB Contract states that the "prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding." In its amended order on fees and costs, the trial court determined that Frisco and Dhillon were the prevailing parties at trial because the jury returned verdicts in their favor on all three claims against them.

¶ 89 Bertoia and WPB argue that the trial court should have apportioned the fees in two ways: First, they argue that the fees should have been apportioned by the hours of work expended to defend Frisco and the hours expended to defend Dhillon and Galaxy. Second, they argue that the fees awarded to Frisco should have been restricted to only the breach of contract claim, not the other claims alleged in the case. We disagree.

42

¶ 90    The trial court determined that the fee-shifting provision's broad language applied to claims to enforce the contract and also to disputes, defaults, or misrepresentations in connection with any provision of the contract. The court found that the three claims presented at trial were "inextricably intertwined and interrelated such that they arise out of the same common factual circumstances and legal theories." It also stated: "The Court is cognizant that the fraudulent omission claim was not asserted directly against Frisco but finds that the same evidence, examinations, and arguments were necessary to defend against the claim." We perceive no error in the trial court's determination that the claims were inextricably linked, and therefore, there was no need to apportion the attorney fees.

¶ 91    Bertoia and WPB also argue that the billing statements provided by Frisco's counsel were "unsworn statements" and should not have been utilized by the court to determine the reasonableness of the requested fees. However, this argument was not preserved before the trial court, so we do not address it further. *See Gold Hill*, ¶ 18 ("Arguments not raised before the trial court may not be raised

for the first time on appeal." (quoting *Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 340 n.10 (Colo. 2004))).

¶ 92 Finally, Bertoia and WPB argue that the trial court should have allowed their expert to testify as to the reasonableness of the claimed fees and costs. The trial court evaluated the proffered expert testimony but concluded that it was "rudimentary, at best, and did not involve a lodestar analysis or application of the [Colo. RPC] 1.5 factors" and that the expert "did not qualify as an expert in Colorado under [CRE] 702." On appeal, Bertoia and WPB fail to explain why this conclusion is unsupported. Given the trial court's broad discretion regarding expert testimony, we perceive no abuse of discretion in this determination. *See Luster*, 205 P.3d at 413.

¶ 93 After reviewing the motion for fees and costs, considering the supplemental affidavit of Frisco's counsel opining that the claimed fees were reasonable, and hearing testimony from Frisco's expert witness, the court properly accepted the billed amount as an appropriate starting point. *See Payan*, ¶ 22. The court then considered each of the Colo. RPC 1.5 factors and concluded no adjustment to the billed amount was warranted. Given the trial court's familiarity with this case and how it was tried, we perceive

no abuse of discretion in the trial court's determination that Frisco was the prevailing party or its calculation of the award of fees and costs. *See Payan*, ¶ 35 ("'[A]ppellate courts must give substantial deference to these determinations, in light of 'the district court's superior understanding of the litigation.' We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it." (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011))). We therefore affirm the trial court's award of fees and costs to Frisco and its award of costs to Frisco and Dhillon.

## B. Appellate Fees and Costs

¶ 94 Both Bertoia and Frisco request appellate attorney fees. Because Frisco is the prevailing party on appeal, it is therefore entitled to an award of fees and costs incurred on appeal. *See Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo. App. 2006) ("When a party is awarded attorney fees for a prior stage of the proceedings, it may recover reasonable attorney fees and costs for successfully defending the appeal.").

¶ 95 Because the trial court is uniquely suited to undertake the factfinding necessary to determine the amount of such an award,

45

we exercise our discretion and remand to the trial court to determine and award Frisco its appellate attorney fees and costs under C.A.R. 39.1 and C.A.R. 39(c)(1).

## IX. Disposition

¶ 96 We affirm the trial court's judgments and orders and remand this matter to the trial court to determine and award Frisco its reasonable appellate attorney fees under the WPB Contract.

JUDGE WELLING and JUDGE KUHN concur.